IN THE

# SUPREME COURT

OF THE

# STATE OF OREGON.

Argued 22 March, decided 18 April, 1904.

## MEAD v. PORTLAND.

[ 76 Pac. 347.]

EFFECT OF FRANCHISE FIXING POSITION OF BRIDGE AS TO STREETS.

1. A legislative franchise to bridge a river flowing through a city, having given the grantee an option to locate it at any street that might be selected, and having provided that one of the approaches must conform to the grade of a certain street running at right angles to the direction of the bridge, the fact that the selection of the street is optional with the grantee does not render the statute any the less effective in establishing the grade of the selected street between the end of the bridge and the cross street as a straight line. In other words, such act is a change of the grade of the selected street between the cross street and the water's edge.

RIGHT ACQUIRED BY ACCEPTANCE OF PUBLIC FRANCHISE.

2. Where a municipal corporation, in pursuance of legislative authority, grants a privilege or right to use or occupy a public street for a public purpose, and the grantee, in reliance on the grant, expends money in developing the grant, he acquires a property interest or right which can be taken away only under the power of eminent domain, and after proper compensation.

CONSTRUCTION OF ORDINANCE GRANTING A PUBLIC FRANCHISE.

3. The owners of lots abutting on a river running north and south, which lots were divided by a street running east and west, terminating at the river, desiring to build wharves, an ordinance was passed, entitled "An ordinance authorizing the construction of a wharf in front of and opposite" the lots referred to. The ordinance provided that the owners of the lots were authorized and permitted to construct a wharf on and in front of the lots, and that the owners should construct a pontoon suitable for the landing of small boats, with steps leading from the pontoon to the lower floor of the wharf. It was provided that the upper story of the wharf should not extend beyond the lines of the block southwardly, save for a passageway 15 feet in width over the north side of the street, and that the whole passageway and a portion of the wharf extending onto the street should be subject to regulation and control by the municipality. *Held*, that the ordinance was a mere regulation of the construction of the wharves, and not a grant of any right or privilege to appropriate the street for wharfage purposes,

and hence the owners took no rights, because of expenditure of moneys in constructing the wharf, of which they could not be deprived by a change of grade of the street as an incident of the construction of an approach to a bridge.

RIGHTS OF LICENSEES IN PUBLIC STREET.

4. One occupying a public street under a permissive ordinance acquires no rights under the rule applicable to executed parol licenses.

LACK OF KNOWLEDGE AS AN ESTOPPEL.

5. A contract not of record and not known to a *bona fide* purchaser of the property thereby affected is not binding and there is no estoppel on such purchaser do deny its existence or effect.

From Multnomah: ALFRED F. SEARS, JR., ARTHUR L. FRAZER, and MELVIN C. GEORGE, Judges, in joint session.

This is a suit by Joshua Roberts Mead and others against the City of Portland and its officers to enjoin and restrain the defendants from closing a passageway in the approach to Morrison Street Bridge, leading to the lower floors of plaintiffs' wharves. The complaint, after alleging that the plaintiffs are the owners of block 76 and lots 3 and 4 in block 77 in the City of Portland, that such property is bounded on the east by the Willamette River, on the west by Front Street, and is divided by Morrison Street, avers that in 1878 the common council adopted "an ordinance authorizing the construction of a wharf in the Willamette River in front of and opposite lots Nos. 3 and 4 in block No. 77," as follows:

"Section 1. The owner or owners of lots 3 and 4, in block 77, in the City of Portland, are hereby authorized and permitted to construct a wharf of piles and timber in the Willamette River on and in front of the lots above mentioned, the easterly line of said wharf to run parallel with the east line of Front Street from a point 100 feet north of the north line of Morrison Street, the lower floor of said wharf to be as near ten feet above the base of grades as practicable: *provided*, that the owner or owners of said above described property shall construct and maintain at their own expense, a pontoon suitable for the landing of small boats, with suitable steps leading from the pontoon to the lower floor of the wharf; said pontoon to be constructed at the

foot of Morrison Street, and to be in accordance with the plan on file in the office of the auditor and clerk.

" Section 2. The upper story or floor of said wharf shall not extend easterly beyond the lines of the lower wharf or beyond the lines of the block southwardly, except for a passageway 15 feet in width along and over the north side of Morrison Street to within 28 feet of the easterly margin of said wharf, and for said distance of 28 feet said passageway shall not extend southwardly into said street for a greater distance than six feet: *provided*, that the whole of said passageway and all those portions of said wharf extending over and into the street shall be subject to regulation by the common council as a part of said street and sidewalk : And, *provided further*, that a suitable trap for fire purposes shall be placed in the lower roadway, to be kept clear and in order by the owners of said wharf.

" Section 3. The owners of the property described in section 1 of this ordinance are hereby authorized and permitted to erect a one-story warehouse thereon, to be constructed of wood with the roof covered with tin, anything contained in Ordinance No. 1140, entitled, 'An ordinance providing for the prevention of fires and the protection of property endangered thereby,' and the several amendments thereto to the contrary notwithstanding."

Afterward, on February 21, 1879, the city council adopted a similar ordinance authorizing the owners of the property on the opposite side of Morrison Street to erect a wharf in front of their property, "running from the center line of Morrison Street extended in a direct course to a point 130 feet south of the center line of Morrison Street, extended at a distance of 137½ feet from the east line of Front Street, the lower floor of said wharf to conform to the grade of Coulter and Church's Wharf at its connection therewith." This ordinance also required that the grantees should construct and maintain, at their own expense, at the foot of Morrison Street, and in accordance with the plans in the auditor's office, a pontoon suitable for the landing of small boats, and contained a provision as to the erection of a

passageway from and along the south side of Morrison Street, and provided "that the whole of said passageway, and all those portions of said wharf extending over and into the street shall be subject to regulation by the common council as a part of said street and sidewalk." The complaint further avers that, under and in pursuance of the provisions of such ordinances, the respective predecessors in interest of the plaintiffs constructed wharves, consisting of two floors or stories, in front of the property owned by them; that the lower floor of each wharf extended to the middle of Morrison Street, and a sidewalk or passageway was erected on each side of the street, on a level with the second floor; that the second story, forming the upper floors of each of the wharves, was built slightly above the level of Front Street, while the lower floors were considerably below such level, and were connected with Front Street by a roadway or incline along Morrison Street, constructed by the owners of the property; that such wharves, docks, and warehouses, and the approaches thereto from Front Street, have been maintained and used by the plaintiffs and their predecessors in interest for more than 20 years as a landing place for boats and vessels navigating the waters of the Willamette River, and for people and teams having business at the docks or wharves; that "said docks and wharves upon and over said Morrison Street, and said approach thereto from Front Street, so constructed and maintained by plaintiffs and their predecessors in interest, have been used as a street or highway by the public," and " * * the same are a public street and highway"; that the wharf over and on Morrison Street, and the roadway leading thereto from Front Street, facilitate travel on that portion of Morrison Street between Front and the river, and contribute to the convenience of boats and vessels in landing, and were constructed and have since been maintained with that end in view, as well

as for the purpose of affording access to plaintiffs' property; that during the greater portion of every year boats and vessels have made their landing and discharged and received their freight and passengers on the lower floor of such wharf.

It is further alleged that in 1878 (Laws 1878, p. 55) the legislature passed an act authorizing the Portland Bridge Company, or its assigns, to construct and maintain a bridge across the Willamette River between Portland and East Portland at such point or location on the bank of the river on or along any of the streets, as might be selected by it, on or above Morrison Street, it being provided "that the approaches on the Portland side to said bridge shall conform to the present grade of Front Street in said City of Portland"; that about the year 1886, in pursuance of the provisions of the act referred to, the Portland Bridge Company, or its successors in interest, constructed a bridge between Portland and East Portland, the west end of which was located at the east end of Morrison Street, and also constructed a plank roadway or approach to the bridge from Front Street; that, when the bridge company began the construction of the bridge, it commenced to build two piers in the Willamette River to support the western end of the structure, within a few feet of and in front of the outer line of the wharves previously constructed by the plaintiff's predecessors in interest, and in such position as to interfere greatly with the use of such wharves; that thereupon the owners of the wharves protested against the acts of the bridge company, and threatened to bring suit or action to prevent the erection of such piers, on the ground that they were and would continue to be public nuisances and illegal; that, as a settlement of such controversy, and in consideration of the waiver by the property owners of their right to institute and prosecute suits and proceedings for such purpose, the bridge company

agreed forever to leave an opening in the center of the approach to the bridge for ingress and egress to and from the wharves of the plaintiffs; that, in pursuance of such agreement and compromise, the property owners refrained from prosecuting suits or proceedings to enjoin the construction of the piers, and the bridge company did not cover the whole of Morrison Street from Front Street to the west end of the bridge with the approach, but left an opening therein 18 feet wide, and extending easterly from Front Street about 95 feet, which opening has ever since existed and is now maintained; that in 1890 the bridge company, notwithstanding its agreement, threatened to close such opening, whereupon the property owners began a suit in the circuit court for Multnomah County to enjoin and restrain it from doing so, and, in consideration of the dismissal of such suit without cost or other proceedings therein, the bridge company contracted and agreed to leave the opening in its then condition, and it has ever since so remained.

It is also stated that in 1895 the legislature passed an act authorizing the City of Portland to acquire by purchase or condemnation the bridge referred to, and on July 3d of that year the bridge company conveyed it to the city by warranty deed, with all its appurtenances; that at the time of the purchase by the city the docks and wharves at the foot of Morrison Street, constructed by the property owners under the previous ordinances of the city, were being, and ever since have been, maintained and used by the plaintiffs and their predecessors in interest; that the defendants now threaten and are proceeding, without tendering or offering to plaintiffs any compensation therefor, to close the opening in the approach to Morrison Street Bridge, which will deprive them and the public of all means of access from the street to the wharves on Morrison Street, and the plaintiffs of property rights

without just compensation. A demurrer to the amended complaint was sustained by the court below, the complaint dismissed, and plaintiffs appeal.    AFFIRMED.

For appellant there was a brief over the names of *Carey & Mays, Chas. E. S. Wood, Stewart B. Linthicum,* and *J. Couch Flanders,* with an oral argument by *Mr. Chas. H. Carey* and *Mr. Linthicum.*

For respondents there was a brief and an oral argument by *Mr. Lawrence A. McNary,* City Attorney, and *Mr. John P. Kavanaugh.*

MR. JUSTICE BEAN, after stating the facts in the foregoing terms, delivered the opinion of the court.

The only substantial difference between this case and that of *Brand* v. *Multnomah County,* 38 Or. 79 (60 Pac. 390, 62 Pac. 209, 50 L. R. A. 389, 84 Am. St. Rep. 772), is that the plaintiffs here assert that the ordinances authorizing the construction by their predecessors in interest of wharves in front of their property, and extending over and across the foot of Morrison Street, and the subsequent construction of such wharves, conferred upon them vested rights, of which they cannot be deprived without compensation, and that the agreement between them and the bridge company that the opening in the approach to the bridge on Morrison Street be forever left open is valid and binding on the defendants, as the successors in interest of the bridge company. The Brand Case decided that a change or alteration of the grade of a street in a municipality may be made by lawful authority, without liability to the abutting property owners for consequential damages, and that an act of the legislature authorizing the construction of a public bridge across the Willamette River at Portland, connecting the streets on either side of the river, and providing that the approach to the bridge on the west side shall conform to the grade of First

Street, is a legislative alteration or change of the grade of the cross street from First Street to the river, for which abutting property owners have no remedy, even though the construction of such approach may entirely cut off access from the street to a wharf in front of their property. So far, therefore, as any of these questions are involved in the present controversy, they are not now open to discussion.

1. The fact that the act of the legislature authorizing the building of the Madison Street Bridge provided that it should be located on a certain street, while that under which the Morrison Street Bridge was built gave the grantee an option to locate it on any street which it might select, on or above Morrison, does not render the latter act any the less effective in establishing the grade of the street selected, and upon which the bridge was actually built. The provisions of the two acts in regard to the approach to the bridge and the manner of its construction are substantially the same; the only difference being that in the former the grantee was confined to a particular street, while in the latter it had the right of selection. When, however, it did locate its bridge, it was as much bound to make the approach conform to the grade of First Street as if the particular street selected had been named in the act.

2. The principal contention is that, by the ordinances granting the plaintiffs and their predecessors in interest the right to construct wharves in front of their property, and to extend the lower floors thereof across the foot of Morrison Street, and to build an incline therefrom, connecting with Front Street, plaintiffs acquired an easement or property right in the street for the maintenance of such wharves and incline, and, having expended their money in the construction thereof, they cannot now be deprived of their rights without just compensation. For the purposes of this case it may be accepted as settled law that

where a municipal corporation, in pursuance of proper
legislative authority, grants a valid franchise, privilege,
or right to use or occupy a public street, common, or levee,
or navigable waters adjacent thereto, for a public purpose,
such as the construction and maintenance of wharves in
aid of commerce, water tanks for use in sprinkling streets,
telegraph and telephone poles, railway tracks, and the like,
and the grantee, in reliance on such grant, expends money
in the prosecution of his enterprise, he thereby acquires
a property interest or right, which can only be taken away
under the power of eminent domain and after proper com-
pensation : 1 Dillon, Mun. Corp. (4 ed.) §§ 110, 111 ; 29
Am. & Eng. Enc. Law (1 ed.) 69 ; *Portland & W. V. R. Co.*
v. *Portland,* 14 Or. 188 (12 Pac. 265, 58 Am. Rep. 299);
*Savage* v. *Salem,* 23 Or. 381 (31 Pac. 832, 24 L. R. A. 787,
37 Am. St. Rep. 688); *City of Des Moines* v. *Chicago, R. I.
& P. R. Co.* 41 Iowa, 569 ; *Phillipsburg Elec. Co.* v. *Phillips-
burg,* 66 N. J. Law, 505 (49 Atl. 445); *Langdon* v. *Mayor
of New York,* 93 N. Y. 129 ; *Williams* v. *Mayor of New York,*
105 N. Y. 419 (11 N. E. 829); *Kingsland* v. *Mayor of New
York,* 110 N. Y. 569 (18 N. E. 435). In such case the
grantee acquires a right or easement in the street different
in kind from that enjoyed by the general public, and the
building or structure put therein by him is under his con-
trol, subject to the paramount authority of the munici-
pality.

3. But as we understand the ordinances in question,
neither the plaintiffs nor their predecessors in interest
were granted rights or privileges, within this rule, to con-
struct and maintain a wharf at the foot of Morrison Street.
The clear purpose of the ordinances was to authorize and
regulate the construction of wharves in front of private
property. It is so expressly stated in the title, and the
granting part of the ordinances provides that the owner
or owners of certain described property are authorized and

permitted to construct a wharf in the river "on and in front of" such property. There is nowhere in either of the ordinances a grant of any right or privilege to build a wharf at the terminus of Morrison Street. In the ordinance adopted in 1878 there is scarcely an inference that the lower floor of the wharf was to extend into Morrison Street, and, as regards the upper floor, the provision is that it should not extend beyond the line of the block, except for a passageway of a certain described width, and over the north side of the street. The grantee was required to construct and maintain pontoons in the river at the foot of the street for the landing of small boats, with steps leading therefrom to the lower floor of the wharf. It was expressly provided that the whole of the passageways along the street and those portions of the wharf extending over and into the street "shall be subject to regulation by the common council as a part of said street and sidewalks"; thus manifesting an intention to preserve the public character of the street, and not to vest in the grantee any rights or privileges therein not enjoyed by the general public. The ordinance of 1879, in describing the dimensions of the wharf authorized to be erected, says that it shall extend a certain distance south from "the center line of Morrison Street," and indicates that the wharf constructed by the property owners on the opposite side of the street extended to that point. The grant, however, is confined to the construction of a wharf "on and in front of" private property; there being a provision like the one in the former ordinance requiring the grantees to construct pontoons in the river for the landing of small boats, while the right is reserved to the council to regulate the passageways along the street, and any part of the wharves extending therein, "as a part of the street and sidewalk." The reasonable interpretation of these ordinances is that they were intended to regulate the construction of wharves by the

property owners on either side of the street in front of their property, with permission, perhaps, to extend the lower floors of such wharves over and across the foot of Morrison Street, for the purpose of affording access from the street to the wharves. There is, however, no grant of any privilege or right to use or appropriate the street, or an extension thereof, for wharfage purposes. On the contrary, the street and any improvements which may be put there by the abutting property owners were reserved to the use of the entire public, and the grantees had no greater rights under the ordinances than those enjoyed by the general public.

That this is the proper construction of the ordinances, and of the rights of the grantees thereunder, is supported by the averment of the complaint to the effect that the wharves and docks constructed by the plaintiffs and their predecessors in interest "upon and over said Morrison Street, and said approach thereto from Front Street, so constructed and maintained by plaintiffs and their predecessors in interest, have been used as a street or highway by the public," and * * "are a public street and highway." If the grantees acquired no other or greater rights or interests in the street than the general public, the fact that they have expended money in extending the street into the river, or building approaches therein to their wharves, or in otherwise improving it, does not give them a right to compensation for the loss or inconvenience caused by a change in the grade, any more than a change in the grade would entitle an abutting property owner to compensation because he had previously improved a street in front of his property by authority of the city. The grantees acquired no private rights under the ordinances, and the construction by them of the wharf and landing at the foot of the street was merely an extension of the street, which did not vest in them any rights other

than those they may have had as a part of the general public: *Hoboken L. & Improv. Co.* v. *Mayor of Hoboken*, 36 N. J. Law, 540. The fact that, by reason of the proximity of their property to the street, they were enabled to make more use of it and its extension than others did, is a mere difference in degree, and not in kind. If the grant had been to construct a wharf at the foot of the street, to be under the control of the grantee, with the express or implied power of collecting tolls for the use thereof, an entirely different question would have been presented for consideration, and the argument of plaintiffs would then have been cogent and forceful. The ordinances, however, did not give to the plaintiffs or to their predecessors in interest authority to build a wharf at the foot of the street for commercial purposes, but rather conferred the right to improve the street by extending it into the river, so that they could the more readily reach their own property therefrom; and the fact that their improvements have been rendered valueless on account of the subsequent change in the grade of the street does not entitle them to compensation.

4. Neither are they entitled to any rights under the rule applicable to an executed parol license. Their occupation of the street, and construction of the wharf and landing at the foot thereof, were permissive, under ordinances of the city defining their rights. They could not acquire any interest or easement in the street not conferred by the ordinances, because their use could not, in law, be adverse: *Thayer* v. *New Bedford Railroad*, 125 Mass. 253; Washburn, Easements, §§ 152, 197. We agree, therefore, with the court below, that the plaintiffs have no vested rights or interests in the street under the ordinances referred to.

5. Nor do we think they can claim relief as against the defendants on account of the alleged contract between them and the bridge company that the opening in the ap-

proach to the bridge should forever remain open. The alleged consideration for such contract was the waiver by the plaintiffs of a right to commence proceedings to enjoin the bridge company from constructing piers to support the bridge in the river opposite the foot of Morrison Street. In view of the rights of plaintiffs under the ordinances referred to, as we have interpreted them, it is doubtful whether this was a sufficient consideration for such contract: *Blackwell* v. *Old Colony R. Co.* 122 Mass. 1; *Thayer* v. *New Bedford R.* 125 Mass. 253; *President of Harvard College* v. *Stearns*, 15 Gray 1. The bridge company, moreover, was acting under a grant from the legislature authorizing it to construct the bridge for the use and convenience of the public as a highway, and it is far from certain that it had authority to contract away any of the rights or duties imposed upon it by the act. But however that may be, the alleged contract was not of record, and there is no averment in the complaint that defendants had notice or knowledge thereof at the time of their purchase.

There were some other questions discussed at the argument, including the effect of the act of the bridge company in leaving an opening in the approach to the bridge at the time of its construction, but they were involved in and determined by the Brand Case, and need not be further considered here.

It follows that the decree of the court below must be affirmed, and it is so ordered. .          AFFIRMED.