## MEAD v. PORTLAND.

### ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 56.   Argued November 27, 1905.—Decided January 2, 1906.

Owners of property erected wharves on the line of an adjoining street on the river front in Portland under ordinances adopted by municipal authorities. They made an agreement with a private bridge as to keeping the street open. The city having bought the bridge proceeded under legislative authority to change the approaches and in so doing affected the access to the wharves. The owners sought to enjoin on the ground that it took their property without compensation and impaired the obligation of their contract with the bridge owners. The state court held the ordinances were merely permissive, and that the persons constructing the wharves had no interest or easement in the streets and the proposed change was merely a change of grade of street for which consequential damages were not allowed under the law of the State. *Held*, that:

While the interpretation of a local ordinance by the highest court of the State is not indisputable, and, even though it may conflict with other decisions of the courts of the State, if it does not conflict with any decision made prior to the inception of the rights involved this court will lean to an agreement with the state court. *Burgess* v. *Seligman*, 107 U. S. 20.

The power to grade streets given by a statute is not necessarily exhausted by one exercise thereof; and, where no Federal question is involved, this court must accept the interpretation of the highest court of a State of a local statute as to the extent of the power under a statute authorizing a municipality to change the grade of streets.

BILL in equity to enjoin defendants from closing a certain passageway in the approach of a bridge called the Morrison Street Bridge, in the city of Portland, Oregon. The approach leads to plaintiffs' wharves. The bill was demurred to and the demurrer sustained by the trial court, defendants declining to plead further, and a decree was entered dismissing the bill. The decree was affirmed by the Supreme Court of the State. 45 Oregon, 1.

The bill alleges that some of the plaintiffs have been for many years owners of block 76 in the city of Portland, and other plaintiffs have been the owners of block 77. These blocks are bounded on the east by the Willamette River and on the west

·by Front street. Morrison street is the north boundary of
block 76 and the south boundary of block 77. Attached to the
properties are valuable riparian rights and wharf rights and
privileges, which entitled the owners to build, maintain and use
the same to the established wharf line of the river, and on them
are warehouses, docks and wharfs of great value, which are oc-
cupied by tenants. The properties are located within the do-
nation land claimed by one Daniel H. Lownsdale, under whom
plaintiffs claim as owners. In the dedication by Lownsdale of
the plat of the town of Portland it is, among other things, pro-
vided as follows:

"The wharves and wharfing privileges are specially reserved
to the owners of the claim, and never (except by deed) subject
to any but the laws of the Territory of Oregon or ordinances
of the town or city corporation, as other town (private) prop-
erty. . . ."

That the common council of said city of Portland adopted an
ordinance, No. 2273, entitled "An ordinance authorizing the
construction of a wharf on the Willamette River in front and
opposite lots numbers 3 and 4, in block No..77," approved Sep-
tember 26, 1878.[1]

---

[1] Ordinance No. 2273.

"Sec. 1. The owner or owners of lots 3 and 4, in block 77, in the city
of Portland, are hereby authorized and permitted to construct a wharf
of piles and timber in the Willamette River, on and in front of the lots
above mentioned, the easterly line of said wharf to run parallel with the
east line of Front street from a point 100 feet north of the north line of
Morrison street, the lower floor of said wharf to be as near ten feet above
the base of grades as practicable; provided, that the owner or owners of
said above described property shall construct and maintain, at their own
expense, a pontoon suitable for the landing of small boats, with suitable
steps leading from the pontoon to the lower floor of the wharf; said pontoon
to be constructed at the foot of Morrison street and to be in accordance
with plan on file in the office of the auditor and clerk.

"Sec. 2. The upper story or floor of said wharf shall not extend easterly
beyond the lines of the lower wharf or beyond the lines of the block south-
wardly, except for a passageway, 15 feet in width along and over the north
·side of Morrison street to within 28 feet of the easterly margin of said wharf,
and for said distance of 28 feet said passageway shall not extend south-

Also an ordinance, No. 2387, entitled "An ordinance author-
izing the construction of a wharf in the Willamette River in
front of and opposite lots Nos. 3 and 4, in block No. 76,"
approved February 21, 1879.[1]

wardly into said street for a greater distance than six feet; provided, that
the whole of said passageway and all of those portions of said wharf ex-
tending over and into the street shall be subject to regulation by the com-
mon council as a part of said street and sidewalk; and provided further,
that a suitable trap for fire purposes shall be placed in the lower roadway,
to be kept clear and in order by the owners of said wharf.

"SEC. 3. The owners of the property described in section 1 of this ordi-
nance are hereby authorized and permitted to erect a one-story warehouse
thereon, to be constructed of wood, with the roof covered with tin, any-
thing contained in Ordinance No. 1140, entitled 'An ordinance providing
for the prevention of fires and the protection of property endangered there-
by,' and the several amendments thereto to the contrary notwithstanding."

[1] Ordinance No. 2387.

"SEC. 1. The owners of lots 3 and 4, in block 76, are hereby authorized
and permitted to construct a wharf of piles and timber in the Willamette
River on and in front of the above described lots. The easterly side of
said wharf to commence at a point 147 feet east of the east line of Front
street and running from the center line of Morrison street extended in a
direct course to a point 130 feet south of the center line of Morrison street
extended, at a distance of 137½ feet from the east line of Front street.

"The lower floor of said wharf to conform to the grade of Coulter and
Church's wharf at its connection therewith; provided, that the owner or
owners of the above described property shall construct and maintain at
their own expense a pontoon suitable for the landing of small boats, with
suitable steps leading from the pontoon to the lower floor of the wharf,
said pontoon to be constructed at the foot of Morrison street, and to be
in accordance with plan in auditor's office.

"SEC. 2. The upper story or floor of said wharf shall not extend easterly
beyond the lines of the lower wharf or beyond the lines of the block north-
wardly, except for a passageway, 15 feet in width, along and over the south
side of Morrison street to within 28 feet of the easterly margin of said wharf,
and for said distance of 28 feet said passageway shall not extend north-
wardly into said street for a greater distance than six feet; provided, that
the whole of said passageway, and all those portions of said wharf extend-
ing over and into the street shall be subject to regulation by the common
council as a part of said street and sidewalk; and, provided further, that
a suitable trap for fire purposes shall be placed in the lower roadway, to
be kept clear and in order by the owners of said wharf.

"SEC. 3. The owners of property described in section 1 of this ordinance

The predecessors in interest of plaintiffs constructed wharves in conformity with the provisions of the ordinances and the grades established therein, the wharf constructed pursuant to Ordinance No. 2387 covering the south half of the street, and that constructed pursuant to Ordinance No. 2273 covering the north half of the street. The wharves consisted of two floors or stories, with a large warehouse over the second floor. The second floors were built slightly above the level of Front street, with approaches as provided in the ordinances. The lower stories or floors of the wharves were considerably below the level of Front street, and were connected with that street by a roadway running on an incline along Morrison street from Front street down to the portion of the wharves built on Morrison street, which roadway was constructed by the respective owners of the properties. The wharves, docks and warehouses and the approach thereto have been used by plaintiffs and their predecessors for more than twenty years, and have been used as landing places for boats and vessels navigating the river and by people and teams having business at the docks and wharves, and the docks and wharves and the approach thereto have been used as a street or highway by the public. The grade of Morrison street occupied by the roadway leading from Front street and over that portion of the street upon which the wharves and docks were built has never been established except by said ordinances, and said portions of Morrison street and the roadway have been and are now improved and used, and the same are· a public street and highway, and were built and have been maintained "in reliance of the rights and privileges therein [the ordinance] maintained."

In 1878 the legislature of the State of Oregon passed an act authorizing the Portland Bridge Company, or its assigns, to

are hereby authorized and permitted to erect a one-story warehouse thereon, to be constructed of wood with the roof covered with tin, anything contained in Ordinance No. 1140, entitled 'An ordinance providing for the prevention of fires and the protection of property endangered thereby,' and the several amendments hereto, to the contrary notwithstanding."

construct and maintain a bridge crossing the Willamette River between Portland and East Portland for all purposes of travel and commerce, " at such point or location on the banks of said river, on and along any of the streets of either of said cities of Portland and East Portland as may be selected or determined on by said corporation, or its assigns, on or above Morrison street of the said city of Portland and in street of said city of East Portland; . . . . and provided that the approaches on the Portland side to said bridge shall conform to the present grade of Front street in said city of Portland."

The bridge was constructed in 1886, the west end of which was located at the east end of Morrison street. Between the west end of the bridge and Front street a plank road or approach was constructed over Morrison street, but the approach did not conform to the grade of Front street, but was constructed at an elevation of more than two feet above such grade at the west end of the bridge, and thence inclined to Front street, and has always been maintained at such elevation. The bridge did not cover the whole of Morrison street from Front street to the west end of bridge, but was so constructed that a portion of Morrison street, not in the center thereof and leading from Front street on an incline to the lower docks and wharves of plaintiffs, was left uncovered and unchanged, the same being about eighteen feet wide and extending easterly from Front street about ninety-five feet. The approaches constructed by the bridge company have been and are sufficient for the passage to and from the bridge for foot passengers, cars and vehicles using the bridge. The opening was left in the decking of Morrison street to provide access to the lower floors of the wharves, and as a means of ingress and egress from them and did not materially interfere with or obstruct the use of city roadways and the wharves and docks as they had been theretofore used.

In 1895 the city of Portland purchased, under legislative authority, the Morrison street bridge from the Willamette Iron Bridge Company, the successor in interest to the Portland Bridge Company, and subsequently, under the provision of an

act of the legislature, approved February 21, 1895, the County
Court of Multnomah County assumed and has since had the
care and operation of the bridge and its approaches.

In 1886 the Willamette Iron Bridge Company began the con-
struction of the bridge and built two piers in the river to sup-
port the western end of the bridge in front of the outer line of
plaintiffs' wharves, in such position as to obstruct navigation
and to greatly interfere with the access to the wharves, and at
the same time began to construct the approach to the bridge
over Morrison street in such manner as to interfere with access
to the wharves. The owners of the wharves in April, 1887,
protested, and a compromise and settlement was effected be-
tween the parties, whereby the bridge company agreed to for-
ever leave an opening in the bridge approach substantially as
it now is, and in consideration thereof the wharf owners agreed
to permit the piers to remain as constructed, and as they have
ever since remained, and to waive all objection to the construc-
tion of the approach in the manner in which it was constructed,
leaving the opening forever open and unobstructed for free in-
gress and egress to the wharves. The parties acted upon the
agreement and the wharf owners did not begin or prosecute
legal proceedings. In 1890, however, the company, notwith-
standing the agreement, threatened to close up the opening,
whereupon the wharf owners commenced a suit in equity to
enjoin the threatened injury, and thereupon, in consideration
of the dismissal of the suit, the bridge company entered into
another agreement to refrain from the threatened acts and leave
the opening and approach in the condition as the same now is.

It is alleged that the city of Portland acquired the bridge and
the approach thereof subject to the said agreement, and the
rights vested in the plaintiffs thereby, and that the defendants
are proceeding, without tendering or offering compensation
therefor, to close said opening, and thereby deprive plaintiffs
of their property without due process of law, contrary to the
Fourteenth Amendment to the Constitution of the United
States.

And it is alleged that the ordinances of the city of Portland, hereinbefore set out, constitute a contract between the city and plaintiffs' predecessors, and the acts of the legislature of the State of Oregon which have been mentioned, so far as they undertake to confer upon defendants the power to close the opening of such bridge without payment of compensation, impair the obligation of such contract, and violate section 10, Article I, of the Constitution of the United States. An injunction was prayed.

*Mr. Charles H. Carey,* with whom *Mr. C. E. S. Wood, Mr. S. B. Linthicum* and *Mr. J. C. Flanders* were on the brief, for plaintiffs in error:

The wharf owners have vested rights which cannot be taken without compensation. They succeeded to the rights of the original townsite proprietors who had reserved "the wharves and wharfing privileges."

By the settled rule in Oregon, abutting lot owners, by virtue of their ownership of lots facing on a street, own the fee to the middle of the street, subject to the public use of the street as a highway. *Banks* v. *Ogden,* 2 Wall. 57; *Huddleston* v. *Eugene,* 34 Oregon, 243, 352; *McQuaid* v. *Portland Ry. Co.,* 18 Oregon, 237.

This case does not come under the rule that a wharf built by a city at the terminus of a street is part of the street, free to the public, and not subject to a private use for which wharfage may be taken. *Russell* v. *The Empire State,* Fed. Cas. No. 12,145; *The Geneva,* 16 Fed. Rep. 874; *Barney* v. *Baltimore,* 1 Hughes, 118, Fed. Cas. No. 1029.

The legitimate and proper use of a street terminating at the river is a landing place, and the municipal corporation has the right to build wharves at the termini of its streets, but this does not apply where the right of wharfage is reserved. 1 Dillon, Mun. Corp., § 109.

The wharves at the foot of the street are private wharves and the builders thereof have a proprietary and vested interest

therein. Laws of Oregon, 1870, p. 125, § 38; Charter and Ordinances of Portland, Comp. 1879, p. 16.

In Oregon the owner of land abutting upon a navigable stream takes only to ordinary high water mark, the land lying below that mark being vested in the State. *Bowlby* v. *Shively*, 22 Oregon, 410; *Shively* v. *Bowlby*, 152 U. S. 1; *Lewis* v. *Portland*, 25 Oregon, 159.

Shore owners are authorized to wharf out in the stream, and the State thereby consented to the use of the submerged lands by the bank owners. Bellinger Codes, §§ 4042, 4043.

The wharves when erected under this statute are considered as aids to commerce, and lawful structures. *Parker* v. *Taylor*, 7 Oregon, 446; *McCann* v. *O. R. & N. Co.*, 13 Oregon, 463.

The privilege granted by this statute was a license, which, however, became irrevocable when once acted upon. *Lewis* v. *Portland*, 25 Oregon, 167.

Even assuming that the city itself had the right to wharf out at the foot of Morrison street, it delegated the power, as it had the right to do. *Simon* v. *Northup*, 27 Oregon, 501; *Farnum* v. *Johnson*, 62 Wisconsin, 620; *Railroad Co.* v. *Portland*, 14 Oregon, 188. The power to "regulate" wharves does not include the power to confiscate them. *Railroad Co.* v. *Joliet*, 79 Illinois, 44; *Langdon* v. *Mayor*, 93 N. Y. 161; *State* v. *Mott*, 61 Maryland, 297; *In re Hauck*, 70 Michigan, 396; *People* v. *Gadway*, 61 Michigan, 286; *McConnvill* v. *Mayor*, 39 N. J. L. 44; *Sweet* v. *Wabash*, 41 Indiana, 7; *Bronson* v. *Oberlin*, 41 Ohio St. 476; *Cantril* v. *Sainer*, 59 Iowa, 26.

The right of the owner of land bounded by a navigable river to access to the navigable part of the stream and to make a landing wharf or pier for his own use or for the use of the public, cannot be capriciously destroyed by a municipality by change of harbor lines. *Yates* v. *Milwaukee*, 10 Wall. 497. And a city must pay for obstructing a riparian owner's access to his wharf, either from the water or from the land side of his property. *Van Dolsen* v. *Mayor*, 21 Blatch. 458; *Myers*

v. *St. Louis*, 82 Missouri, 367; *Weber* v. *Harbor Comm'rs*, 18 Wall. 57; *Demopolis* v. *Webb*, 87 Alabama, 668; *Langdon* v. *Mayor*, 93 N. Y. 152.

The action of the city in cutting off access to the wharves is in effect a taking of plaintiffs' property without due process of law. *Willamette Iron Works* v. *O. R. &. N. Co.*, 26 Oregon, 233.

The injury to the plaintiffs is not an injury common to the public, but is a private nuisance, for which an action will lie, or which may be restrained by injunction. *Wilder* v. *DeCou*, 26 Minnesota, 11; *Schulte* v. *North Pac. Transp. Co.*, 50 California, 592; *Parker* v. *Taylor*, 7 Oregon, 435; *Price* v. *Knott*, 8 Oregon, 438; *Garitee* v. *Balance Co.*, 13 How. Pr. 40; *Gould on Waters*, §§ 122, 123, 124.

The right of wharfage is a property right which can be taken only by the exercise of the right of eminent domain on making compensation to the owner of the wharfage right. Dillon, Mun. Corp., § 107; *Crocker* v. *New York*, 15 Fed. Rep. 401; *Classen* v. *Guano Co.*, 81 Maryland, 258.

Even if the ordinances granted rights in the nature of a franchise, the grant was based upon ample consideration to the city, so that, if it is a license, and fully executed, it is now irrevocable. *Garrett* v. *Bishop*, 27 Oregon, 349.

Even if the bridge act is a legislative change of grade, the city cannot arbitrarily destroy the wharf rights. *Seattle* v. *Railroad Co.*, 6 Washington, 370.

In Oregon, a license, after it has been exercised and expenditures have been made in reliance thereon, is irrevocable, and the right granted cannot be destroyed without compensation. *Curtis* v. *Water Co.*, 20 Oregon, 34; *McBroom* v. *Thompson*, 25 Oregon, 567; *Garrett* v. *Bishop*, 27 Oregon, 352; *Powder Co.* v. *Coughanour*, 34 Oregon, 21; *Bowman* v. *Bowman*, 35 Oregon, 281; *Hallock* v. *Suitor*, 37 Oregon, 13; *Savoge* v. *Salem*, 23 Oregon, 385.

The defendants cannot close this opening in Morrison street, because of an agreement with the bridge company to leave it

open, and because of the long acquiescence of the city in the plaintiffs' occupation and use of these wharves. Having received benefits at the expense of the other contracting party, the city is estopped. *United States* v. *Railroad Co.*, 54 Fed. Rep. 811; *In re Parker*, 11 Fed. Rep. 397; *Commonwealth* v. *Andre*, 3 Pick. 225; *Vidal* v. *Girard*, 2 How. 191; *Enfield* v. *Permit*, 5 N. H. 285; *Pengra* v. *Munz*, 29 Fed. Rep. 830; *Vermont* v. *Society*, 2 Paine, 546, 560; *Cahn* v. *Barnes*, 5 Fed. Rep. 326, 334; *Commonwealth* v. *Pejepscut*, 10 Massachusetts, 155; *People* v. *Maynard*, 15 Michigan, 470; *Menard* v. *Massey*, 8 How. 313; *State* v. *Bailey*, 19 Indiana, 454; *Opinion of Court*, 49 Missouri, 225; *Hitchcock* v. *Galveston*, 96 U. S. 351; *Railroad Co.* v. *Elgin*, 91 Illinois, 251.

The Supreme Court of Oregon erred in deciding that the effect of the bridge act was to change the grade of the street.

In Oregon an abutting proprietor has no right to compensation for damage incidental to the change of grade of a city street. *Brand* v. *Multnomah County*, 38 Oregon, 79; Laws of Oregon, 1864, p. 18, §§ 78, 79; see Laws of Oregon, 1898, 150, 165. The bridge act was in effect a "float," and may be likened to the congressional grant of lands to a railroad company. By its terms it was not to be a vested, granted franchise until the conditions precedent had been fulfilled.

When the bridge was located and the amount of space in Morrison street to be appropriated was determined upon, the election was final, and other portions of the street were excluded. *Van Wycke* v. *Knevals*, 106 U. S. 360. This is merely a statement of a familiar rule of easements. *Jennison* v. *Walker*, 11 Gray (Mass.), 426; *Bannon* v. *Angier*, 2 Allen (Mass.), 128; *Ev. L. St. J. O. H.* v. *Hydraulic Assn.*, 64 N. Y. 564; *Onthank* v. *Railroad Co.*, 71 N. Y. 194; *Warner* v. *Railroad Co.*, 39 Ohio St. 72; *Willis* v. *Winona*, 59 Minnesota, 27; see also *Allen* v. *Freeholders*, 13 N. J. Eq. 68; *Moorehead* v. *Railroad Co.*, 17 Ohio, 340; *Griffen* v. *House*, 18 Johns. (N. Y.) 397; *Cayuga Bridge Co.* v. *Mager*, 6 Wend. (N. Y.) 85;

*State* v. *Turnpike Co.*, 10 Connecticut, 157; *Blackmoore* v. *Glamorganshire Canal*, 1 Mylne & K. 154.

Mr. *L. A. McNary*, with whom *Mr. J. P. Kavanaugh* was on the brief, for defendant in error:

The question in this case is the validity of the statute that is alleged to impair the contract, and not whether it was properly construed by the state court. *Central Land Company* v. *Laidley*, 159 U. S. 103; *Commercial Bank* v. *Buckingham*, 5 How. 317.

The real question presented by plaintiffs is whether the statute was properly construed, and not whether the statute itself is valid.

The ordinances of the city of Portland authorizing the construction of the wharves do not constitute a contract between the said city and plaintiffs' predecessors in interest. Sections 4042, 4043, Bellinger's Code; *Wabash Railroad Co.* v. *Defiance*, 167 U. S. 88.

The lower floors of the private wharves extend over and upon Morrison street, but it is not alleged that they extend beyond the eastern terminus of Morrison street into the Willamette River.

The disclaimer by plaintiffs of any proprietory interest or private ownership in the wharves on Morrison street is fatal to their claim to relief by injunction. *Transportation Company* v. *Chicago*, 99 U. S. 635; *Hoboken L. & I. Co.* v. *Mayor*, 36 N. J. L. 540; *Thoyar* v. *New Bedford R. R. Co.*, 125 Massachusetts, 257.

The closing of the driveway through the approach on Morrison street is not a taking of plaintiffs' property without due process of law. The closing is merely the result of the establishment of the street grade, and that does not constitute a taking of property within the meaning of the Constitution. 2 Dillon Mun. Corp., 4th ed., § 686; *Willits Mfg. Co.* v. *Board*, 62 N. J. L. 95.

The closing of the driveway is not a confiscation of plaintiffs'

property, because the amended complaint shows that plaintiffs have other means of access to both the upper and lower wharves.

Mere inconvenience in the access to property is not a sufficient reason to prevent the city from closing the driveway. *Burns* v. *Gallagher*, 62 Maryland, 462; *Mitchell* v. *Seipel*, 53 Maryland, 251.

The wharves were not constructed under an irrevocable license. No exclusive right to or interest in the wharves was granted to or claimed by the owners of the private wharves, and in such case the license is revocable at the pleasure of the licensor. *Parish* v. *Kaspare*, 109 Indiana, 586; *Stock Yards* v. *Wiggins Ferry Co.*, 112 Illinois, 384; *Rayner* v. *Nugent*, 60 Maryland, 515.

The agreement of the bridge company to leave the driveway open does not bind the city, because when the approach was built it became a public highway under the control of the city and the company had no authority to keep a part of the street surface open. *Pittsburg Railway* v. *Point Bridge Co.*, 165 Pa. St. 37.

This alleged agreement was not of record, and it does not appear that the city had any notice of it, so that the city, being an innocent purchaser in good faith and for value, took the property free from any such arrangement.

Mr. Justice McKenna, after making the foregoing statement, delivered the opinion of the court.

If we determine what rights plaintiffs had in Morrison street and the river, we shall be able to determine their contentions. Plaintiffs claim a contract with the city based on the ordinances which authorize plaintiffs to construct their wharves, but they also claim rights which they say were attached to the property and reserved to it by Daniel H. Lownsdale, "of the wharves and wharfing privileges." The rights so reserved are made especially dominant. Indeed, the rights obtained from the city are somewhat minimized and depreciated. All the city

could do, it is said, and all the city attempted to do by its ordinances, was to authorize the riparian owners to build their wharves. Why authority from the city was necessary in view of the reservation in the Lownsdale dedication, if it was as extensive as contended, seems to call for explanation, and explanation is given by saying that the ordinance was but the exercise of the authority to regulate the manner in which the wharves were to be built by the riparian proprietors. And plaintiffs, to point their reliance on the reservation in the Lownsdale dedication, say: "Whether the ordinances do or do not purport to grant a privilege or right to use or appropriate the street or an extension thereof for wharfing purposes, the right exists; and it existed because of the reservation in the plat, long before the ordinances; and it exists independent of any action of the city. This right is different in kind from the right of the public to use the street. And it is a valuable right, which cannot be taken away or destroyed without compensation."

Plaintiffs, however, in other parts of their argument claim, by reason of the ordinances, an irrevocable license, and in the pleadings give prominence to nothing else but the rights conferred by the ordinances. On account of this probably neither the trial court nor the Supreme Court commented on the Lownsdale dedication. But we will not consider plaintiffs precluded by that omission. It is very clear to us that their contention under the Lownsdale dedication is not sound. The purpose of the dedication was an addition to the city. Streets were contemplated and power of the city over them, and this purpose and power is as clear and definite in the dedication as the reservation of rights to lot owners. This was the view of plaintiffs' predecessors when they applied for the ordinances. Therefore the fundamental proposition in the case is, the power of the city over its streets, and how far that power was limited or could be limited by the ordinance upon which plaintiffs rely.

It will be observed that the wharves were constructed on Morrison street and "used as and the same are a public street and highway." In other words, the bill alleges that the wharves

on Morrison street formed a part of the street and were open to general and public use.

What power the city of Portland had to grant rights in its streets depends upon its charter, and interpreting the ordinance. upon which plaintiffs rely the Supreme Court of Oregon decided that neither the plaintiffs nor their predecessors in interest were granted rights or privileges in the street different in kind from that enjoyed by the public.

"The clear purpose of the ordinances," the court said, "was to authorize and regulate the construction of wharves in front of private property. It is so expressly stated in the title, and the granting part of the ordinances provides that the owner or owners of certain described property are authorized and permitted to construct a wharf in the river, 'on and in front of' such property. There is nowhere, in either of the ordinances, a grant of any right or privilege to build a wharf at the terminus of Morrison street. In the ordinance adopted in 1878 there is scarcely an inference that the lower floor of the wharf was to extend into Morrison street, and, as regards the upper floor, the provision is that it should not extend beyond the line of the block, except for a passageway of a certain described width, and over the north side of the street. The grantee was required to construct and maintain pontoons in the river at the foot of the street for the landing of small boats, with steps leading therefrom to the lower floor of the wharf. It was expressly provided that the whole of the passageways along the street and those portions of the wharf extending over and into the street 'shall be subject to regulation by the common council as a part of said street and sidewalks,' thus manifesting an intention to preserve the public character of the street, and not to vest in the grantee any rights or privileges therein not enjoyed by the general public. The ordinance of 1879, in describing the dimensions of the wharf authorized to be erected, says that it shall extend a certain distance south from 'the center line of Morrison street,' and indicates that the wharf constructed by the property owners on the opposite side of the street extended

to that point. The grant, however, is confined to the construction of a wharf 'on and in front of' private property; there being a provision like the one in the former ordinance requiring the grantees to construct pontoons in the river for the landing of small boats, while the right is reserved to the council to regulate the passageways along the street, and any part of the wharves extending therein 'as a part of the street and sidewalk.' The reasonable interpretation of these ordinances is that they were intended to regulate the construction of wharves by the property owners on either side of the street in front of their property, with permission, perhaps, to extend the lower floors of such wharves over and across the foot of Morrison street, for the purpose of affording access from the street to the wharves. There is, however, no grant of any privilege or right to use or appropriate the street, or an extension thereof, for wharfage purposes. On the contrary, the street and any improvements which may be put there by the abutting property owners were reserved to the use of the entire public, and the grantees had no greater rights under the ordinances than those enjoyed by the general public." And this construction, the court observed, was supported by the averments of the complaint. It was, therefore, decided that plaintiffs acquired no greater rights in the street than the general public nor a right to compensation for loss or injury caused by a change in the grade any more than a change in the grade would entitle an abutting owner to compensation because he had improved the street in front of his property. And decided also that the ordinances "did not give to the plaintiffs or to their predecessors in interest authority to build a wharf at the foot of the street for commercial purposes; but rather confer the right to improve the street by extending it into the river, so that they could the more readily reach their own property therefrom, and the fact that their improvements have been rendered valueless on account of the subsequent change in the grade of the street does not entitle them to compensation.

"Neither are they entitled to any rights under the rule ap-

plicable to an executed parol license.. Their occupation of the
street and construction of the wharf and landing at the foot
thereof, were permissive, under ordinances of the city defining
their rights. They could not acquire any interest or easement
in the street not conferred by the ordinances, because their use
could not, in law, be adverse. *Thayer* v. *New Bedford Railroad,*
125 Massachusetts, 253; Washburn on Easements, §§ 152, 197."

Against these conclusions plaintiffs cite other Oregon cases.
We are, however, not called upon to reconcile the cases. Plain-
tiffs point to no case decided prior to the construction of the
wharves which interprets the ordinance as they now contend
for, which might bring the case within the ruling of *Muhlker* v.
*New York & Harlem R. R. Co.,* 197 U. S. 544, and *Lewis* v. *City
of Portland,* 25 Oregon, 133, 159. And if we could say that the
construction of the ordinances by the Supreme Court is not indis-
putable, yet we are required by the rule expressed in *Burgess*
v. *Seligman,* 107 U. S. 20, and the many cases which have fol-
lowed it, to incline to an agreement with the state court.

In accordance with the doctrine announced in *Brand* v. *Mult-
nomah County,* 38 Oregon, 79, the Supreme Court decided that
a change or alteration of the grade of a street may be made by
lawful authority, without liability to abutting property owners
for consequential damages, and that the act of October 18, 1878,
was a legislative change of the grade of Morrison street for its
full width. Plaintiffs do not deny that the legislature has such
power. They make, however, two contentions (*a*) That the
act of 1878 was not intended to change the grade of the street
and did not do so. (*b*) If it did change the grade at all, it
changed it as to those portions of the street only which were
actually made use of on the new grade as an approach to the
bridge, the remainder not being affected by the act. As to the
latter point, it is contended that the power given to the bridge
company to build an approach to the bridge on Morrison street
to conform to the grade on Front street was exhausted with the
exercise of the right, and that the defendants have no power
under the act, after a lapse of twenty years, to extend the

approach of the bridge to cover the opening in Morrison street, and change the grade where it was not changed when the approach was built.

The act of 1878 is a local statute and in its interpretation involves no Federal question, nor does it become such by the circumstances of this case. It expresses the legislative authority and its interpretation by the Supreme Court of the State we must accept. And the power to grade was not exhausted by one exercise. *Goszler* v. *Georgetown,* 6 Wheat. 593, 597; *Wabash R. R. Co.* v. *Defiance,* 167 U. S. 88. It is a phase of the same contention that the bridge company was given the right of election of the manner of constructing the approaches, and, being bound by that election, the city, its successor, is also bound.

*Judgment affirmed.*