Argued September 19, reversed November 24, 1975,
reconsideration denied January 7, petition for
review denied February 24, 1976

IN THE MATTER OF THE QUESTION IN CONTROVERSY
BETWEEN
URBAN RENEWAL AGENCY OF THE CITY
OF EUGENE, *Appellant, and* PACIFIC
NORTHWEST BELL TELEPHONE COMPANY
(No. 74-4158) (CA 4512), *Respondent.*
542 P2d 908

*Joe B. Richards,* Eugene, argued the cause for appellant. With him on the briefs were Luvaas, Cobb, Richards & Fraser, Eugene.

*Lloyd G. Hammel, Jr.,* Portland, argued the cause for respondent. With him on the brief were Alan J. Gardner, Portland, and John E. Jaqua, Eugene.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

This case was submitted to the trial court on an agreed statement of facts under ORS ch 27. At the request of the Urban Renewal Agency of the City of Eugene, hereinafter known as ERA (Eugene Renewal Agency), and in accordance with the Urban Renewal

plan adopted by the City in 1968, the City had vacated an alley in downtown Eugene. The alley contained underground conduit, poles, and cable of Pacific Northwest Bell (PNB). The question at issue is whether ERA or PNB should pay the costs of relocating PNB's facilities to an adjoining street. ERA appeals from the trial court's ruling that it must pay the relocation costs of $40,700.[1]

The relationship between the City and PNB or its predecessor in interest has been governed by a series of ordinances passed in 1918, 1944, 1953, and 1971, granting the company a franchise to provide telephone service in Eugene. Section 1 of all ordinances prior to 1971 required the phone company to use underground conduit in the streets of the downtown area, allowing poles only in alleys. It was under these sections that PNB installed its facilities in the alley in question.

---

[1] ERA was created pursuant to ORS 457.130(1) and exercises its powers (see ORS ch 457) as a result of a resolution of the City of Eugene adopted thereunder. It is an agency of that city. Under ORS 457.150(1) the City is required to approve an urban renewal plan before the agency may act on it. The Urban Renewal Plan for the Central Eugene Project for the City of Eugene was adopted by the City after a public hearing by the City Council of the City of Eugene in December 1968, and provides among other things in Section D(1)(a) for the clearance and redevelopment of the block in question. This block is shown on the land use map contained in the plan as having all alleys removed. Section D(4) of the plan provides:

"Utility facilities will be relocated as necessary * * * by reason of street modifications. The private utilities concerned will make such modifications and adjustments as may be required of them *by reason of applicable law* and through cooperation with the Urban Renewal Agency. * * *" (Emphasis supplied.)

During the course of its work to carry out the City's plan, ERA requested the City to vacate the alleys in the block in question which the City did in Ordinance No. 17101 on June 10, 1974 pursuant to Chapter VII, Section 48 (36) of the Charter of the City of Eugene, Oregon.

Section 5 of the ordinances has remained virtually unchanged since 1918[②] and reads as follows:

"All of said poles or other structures for the carrying of the wires shall be set and maintained at such places in the streets, alleys, public utility easements and public highways of the City of Eugene as the City of Eugene may direct, and the City of Eugene may, whenever any such poles or other structures shall unnecessarily inconvenience the public or property owners, require the removal or change of location of any such pole or poles."

In the stipulated statement of facts, PNB waived an express demand by the City for relocation and also waived an express finding by the City that the poles and other structures unnecessarily inconvenienced the public or property owners.

■ The basic question raised by ERA's three assignments of error is whether under the terms of the franchise contract and as a result of expending capital and labor in placing its facilities in the alley PNB had acquired a property interest in having its facilities in the alley so it could not be compelled to relocate them without compensation, or whether under the franchise contract and under the common law PNB's rights in the alley location were on these facts subject to relocation without compensation when the public need required. Section 5 does not completely answer this question. The previous history listed in the agreed statement of facts is not conclusive on this issue.

We think this case is controlled by *Highway Com. v. Clackamas W. Dist.*, 247 Or 216, 428 P2d 395 (1967). There the Oregon Supreme Court said:

"When a franchise is granted by the state or county to lay pipes or other structures in a roadway, there is an implied obligation on the part of

---

[②] The 1971 franchise ordinance added the phrase, "public utility easements." The phrase does not affect this case.

the grantee to relocate its facilities *at its own expense* when a governmental use of the streets makes the relocation necessary. This implication has been found even where the governmental unit granting the franchise was not the agent of the governmental unit demanding the relocation of the facilities. * * *" (Emphasis supplied; footnote omitted.) 247 Or at 220-21.

In support of its position the court cited and quoted from *Southern Cal. Gas Co. v. City of L. A.,* 50 Cal 2d 713, 329 P2d 289 (1958), *cert denied* 359 US 907 (1959), which held that a city could require relocation of the utility's gas lines at the expense of the utility when required by a sewer construction project:

"* * * The [California] court went on to say:

" 'The right of municipal corporations to require utilities to relocate their lines to make way for governmental uses of the streets has usually been described as resting in the police power, and it has frequently been stated in this context that the police power cannot be bargained away.' " 247 Or at 221.

The Oregon Supreme Court continued:

"The trial court correctly concluded that the franchise granted to defendant 'is not a vested property right but merely a permissive use subject to revocation or change whenever the use of the right of way for the benefit of the public requires it.'

"* * * When a franchise is granted to install a pipeline or other facilities in land held by a governmental unit it is reasonable to imply a limitation on the grant requiring the grantee to bear the cost of relocation in the event that the construction of a highway or other public work is deemed desirable. * * *" 247 Or at 222.

PNB argues that that case applies only to states and counties and not to municipal corporations. We dis-

agree and conclude that the Supreme Court clearly intended the rule to apply to cities as well. *See, Highway Com. v. Clackamas W. Dist.,* supra, 247 Or at 221.

The decision in *Southern Cal. Gas Co. v. City of L. A.,* supra, was based on the following statement of the common law rule:

> "In the absence of a provision to the contrary it has generally been held that a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the streets. * * *." 50 Cal 2d at 716.

That Oregon recognizes this rule is indicated not only by *Highway Com. v. Clackamas W. Dist.,* supra, but also by the following statement in *Multnomah County v. Rockwood W. Dist.,* 219 Or 356, 347 P2d 110 (1959):

> "It is an almost universal common-law rule that private utility companies are required to move at their own expense their water, electric and other lines, subject to the police power of the state, and whenever the health and public safety require this to be done, unless they are covered by special ordinance or law. *Transit Commission v. Long Island Railroad Co.,* 253 NY 345, 171 NE 565; *New Orleans Gaslight Co. v. Drainage Commission of New Orleans,* 197 US 453, 25 S Ct 471, 49 L ed 831." 219 Or at 361.

This rule is also stated in 12 McQuillin, Municipal Corporations 176, § 34.72 (3d ed rev 1970) as follows:

> "The grantee of a franchise to use the streets takes it subject to the right of the municipality to make public improvements whenever and wherever the public interest demands, and if the improvement causes injury to the company, as by requiring it to relay or change the location of its

pipes, tracks, or poles, or otherwise, the grantee of the franchise cannot recover damages from a municipality therefor. * * * This rule is merely an application of the rule that the grant of the franchise is subject to any proper exercise of the police power. * * *" (Footnotes omitted.)

In opposition to this position, PNB argues that while it is willing to relocate its facilities within the alley without compensation, it cannot be required to relocate outside of it. A similar argument was rejected by the New York Court of Appeals in its application of the common law rule in *N. Y. Tel. Co. v. City of Binghamton*, 18 NY2d 152, 272 NYS2d 359, 219 NE2d 184 (1966). There the court held that a relocation of telephone facilities from one street to another should be at the cost of the telephone company when the city closed part of a street for a housing project. The court held that the common law rule applied to this case in which the phone company was required to move its facilities from one street to another and that the city's actions to redevelop a blighted area were governmental rather than proprietary activities, even though the land would eventually be sold to private developers.

PNB also argues that requiring them to relocate without payment is forbidden by two Oregon cases: *Savage v. City of Salem*, 23 Or 381, 31 P 832, 37 Am St R 688, 24 LRA 787 (1893), and *Mead v. Portland*, 45 Or 1, 76 P 347 (1904), *aff'd* 200 US 148, 26 S Ct 171, 50 L Ed 413 (1906). In *Savage*, the plaintiff had been given permission to place two water tanks in the public right-of-way which he used for sprinkling streets at the cost of the adjoining property owners. Four years later the city removed the tanks, and the plaintiff sued for damages. The Supreme Court held that the city could not revoke the license it had granted without compensation unless the structures had become a public nuisance. The *Savage* case is not on

point with the case at bar since there the city had revoked the entire license of the plaintiff to operate his business and it had required removal of all his facilities and not just relocation of a minor portion of them.

*Mead v. Portland,* supra, can be distinguished on similar grounds. In holding that the plaintiff did not have a license from the city to construct his wharf across a public right-of-way, the court stated that the grantee of a franchise to use the public streets who spends money on his enterprise acquires a property right that cannot be taken without compensation. On the basis of this statement, PNB has a vested property right in its franchise and the City of Eugene could not require it to give up the franchise or remove all of its facilities without compensation. The statement does not prohibit relocation of a small portion of its facilities.

The application of the common law rule that public utilities may be required to relocate facilities at their own expense when public need requires it is supported by a reasonable construction of the franchise contract. Section 5 states that the city may require relocation of facilities, but does not say whether or not it must compensate PNB. It is established law that a franchise contract should be interpreted in favor of the public:

> " 'It is a rule of construction that, if the terms of the franchise are doubtful, they are to be construed strictly against the grantee and liberally in favor of the public. What is not unequivocally granted is withheld, and nothing passes by implication, except what is necessary to carry into effect the obvious intent of the grant.' " *Rose City Transit v. City of Portland,* 18 Or App 369, 381, 525 P2d 1325 (1974), *aff'd as modified* 271 Or 588, 533 P2d 339 (1975), *quoting from city of Joseph v. Joseph Water Works Co.,* 57 Or 586, 591, 111 P 864, 112 P 1083 (1910).

Under these principles, we conclude the City may vacate the alley and require PNB to relocate its facilities without compensation.

This interpretation is supported by *Washington Nat. Gas Co. v. Seattle,* 60 Wash2d 183, 373 P2d 133 (1962), in which the Washington Supreme Court stated that it was the rule that

"* * * if the franchise is silent as to payment of the cost of relocation of utilities, made necessary by public improvements, the cost must be borne by the franchise holder." 60 Wash2d at 186.

■ PNB argues that if Section 5 requires it to relocate facilities without compensation, that section refers only to poles so that ERA must pay for the conduit relocation. The first two lines of the section refer to poles or other structures for the carrying of the wires. We conclude that conduits are structures for carrying of wires and are covered by the section.

Reversed.