[Argued Nov. 28, 1892;  decided Jan. 9, 1893.]

## JOHN SAVAGE *v.* CITY OF SALEM.

[S. C. 31 Pac. Rep. 832.]

STREET OBSTRUCTIONS — NUISANCES.— The streets and highways belong en-
tirely to the public, and cannot be encroached upon or impeded by pri-
vate persons for private use; but municipal corporations having control
of streets, may permit erections or obstructions therein when they are
intended to supply a public demand.

NUISANCES — WATER TANK IN STREET.— Water tanks erected by a private in-
dividual to supply his wagons with water to sprinkle the city streets,
under an express authority from the city council, for compensation to
be received by him from adjoining property owners, are not nuisances
*per se*, although they may become nuisances by subsequent use.

LICENSE — REVOCATION — NUISANCE.— A city which has granted a license or
franchise to a private person to occupy a portion of a street for a public
purpose — such as the erection of water tanks to supply his street
sprinklers — cannot, after he has expended money on the faith thereof,
revoke his license without compensating him, unless such erection is or
has become by subsequent use an actual nuisance, which is a question
for the jury.

Marion County :  REUBEN P. BOISE, Judge.

This is an action to recover damages for the removal
by defendant of two water tanks which had been, with

permission of defendant, erected by plaintiff on State and Court Streets in the city of Salem for the purpose of supplying sprinkling wagons with water for street sprinkling, and comes here on appeal from a judgment in favor of the plaintiff.    Affirmed.

*D'Arcy & Bingham,* for Appellant.

*Bonham & Holmes,* for Respondent.

BEAN, J.— On the sixteenth of February, 1887, the city of Salem, through its common council, authorized and empowered the plaintiff, under the supervision of its street supervisor, to erect and maintain water tanks for the purpose of supplying his street-sprinkling wagons with water with which to sprinkle and allay the dust on certain of the principal streets of the city, for a compensation to be by him received from the adjoining property owners.    Under this authority the two tanks in question were erected by plaintiff at the places designated by and under the supervision of the street supervisor, and were maintained and used by plaintiff for the purposes for which they were authorized, until July 7, 1891, when the council ordered and directed the street commissioner to remove the tanks, which was accordingly done after a refusal by plaintiff to remove them himself, whereupon this action was commenced to recover damages for such removal.

The contention for defendant is, (1) that the city had no power or authority to authorize the erection of these water tanks in the streets, because they were to be used for private purposes, and were therefore nuisances *per se,* which could be abated at any time; and (2) if this is not so, the permission to so erect them was but a mere license, revocable at the pleasure of the city.    At the outset it is well to note that this case is unembarrassed by any question as to the right or remedy of an abutting property owner, or of a private individual who has suffered some injury special to himself, and not in common

with the public, from the erection or obstruction in question, but is solely a question between the municipality which authorized the alleged obstruction and the licensee; hence many of the authorities cited and relied on by the defendant are not applicable to the facts of this case, or in point, and the language of the opinions in these, as in all cases, must be interpreted in the light of the particular facts as presented to the court.

As a general rule, it has been said that "public highways belong, from side to side, and end to end, to the public": *State* v. *Berdetta*, 73 Ind. 185 (38 Am. Rep. 117); Elliott, Roads, 478; hence any unauthorized permanent erection or structure which materially encroaches upon a public street or highway, and impedes or interferes with travel, is a nuisance *per se*, and may be abated as such, notwithstanding ample space is left for passage by the public.   But it now seems settled that municipal authorities which possess under their charters general control over the streets, have the power to and may authorize and render lawful obstructions and erections therein for a public purpose, which otherwise would be deemed nuisances, on the ground that such erections or structures are merely putting the street to a new and improved use, as demanded and required by the necessities of the times and the modern conveniences and appliances.   It is upon this principle that the right to grant franchises authorizing the use of the streets for water and gas pipes, for the construction and operation of street railways, the erection of water hydrants and lamp posts, of telegraph, telephone, electric-light, and railway poles, and similar structures, is maintained and now generally recognized and upheld by the courts:   2 Dillon, Mun. Corp. §§ 657–637; Keasby, Electric Wires, 86, 89; Thompson, Electricity, §§ 26, 28.   Since a municipal corporation holds its control and power over the streets in trust for the public, it has no authority to authorize or permit private persons or corporations to erect or maintain permanent obstructions therein for purely private purposes: *Pettis* v. *John-*

*son,* 56 Ind. 139; *Emerson* v. *Babcock,* 66 Iowa, 257 (23 N. W. Rep. 656); *Farrell* v. *Mayor,* 5 N. Y. Supp. 672. But it may authorize such erections or structures by private persons or corporations for the purpose of serving the public for private gain, and in such case, although such structures may in fact be or become a public nuisance, and liable to abatement as such, they cannot be held to be a nuisance *per se.* "It is a legal solecism to call that a public nuisance which is maintained by public authority": *Harris* v. *Thompson,* 9 Barb. 350. Hence, in *Commonwealth* v. *City of Boston,* 97 Mass. 553, it was held that the specifications and decision by the mayor and aldermen of a city through which the lines of an electric telegraph company pass, made and recorded, determining the kind and location of the posts of the company in a highway, are conclusive upon the rightfulness of their erection, so that they cannot be lawfully removed by the city or its officers, or treated in any manner as a public nuisance. So where a railroad company, under an act granting it power to construct its railroad on a public highway, occupied a portion of the road, not exceeding the extent allowed by law, and obstructed travel on such portion, it was held not to be guilty of a nuisance: *Danville R. R. Co.* v. *Commonwealth,* 73 Pa. St. 29. To the same effect is *Randle* v. *Pacific R. R. Co.* 65 Mo. 325.

It follows, then, that the water tanks in question having been erected by plaintiff by the authority and permission of the defendant at the places designated and selected by its agent and under his supervision, cannot be held to be public nuisances *per se,* if they were erected and maintained for public and not private purposes, and this depends upon whether sprinkling the streets of a municipality is a public purpose, or, in other words, a business in which the corporation itself may lawfully engage. There seems scarcely room for two opinions upon this point, so unquestionable is it that street sprinkling is a public purpose. As was said by PIERPONT, J., in *West* v. *Bancroft,* 32 Vt. 371, in sustaining the right of

the city to construct a reservoir in a street for the pur-
pose of retaining water to be used in sprinkling streets
and extinguishing fires: "All those acts which tend to
facilitate travel, and add to the ease, comfort, and con-
venience of the traveler, or his beasts, whether it be by
cutting down hills, filling ravines, paving roads, erecting
watering-troughs, or sprinkling the streets, are acts
which it is proper and often necessary for the public to
do,   *   *   *   and perhaps no other one of these acts
would add so much to the comfort of the passers on the
highway, as well as all the inhabitants of the village, as
that of the sprinkling the streets." And in *State* v. *Reis,*
38 Minn. 371 (38 N. W. Rep. 97), it was held that street
sprinkling is a "local improvement," for which an
assessment may be levied upon the property fronting or
abutting upon the street sprinkled in proportion to its
lineal feet frontage; and in the course of the opinion,
MITCHELL, J., said "that street sprinkling is a public
purpose, is unquestioned." So, too, a public pump in a
street has been held not to be a nuisance to an abutting
lot-owner, when maintained by the city authorities: *Los-
tutter* v. *City of Aurora,* 126 Ind. 436 (26 N. E. Rep. 184).
We conclude, therefore, that the water tanks erected by
the plaintiff were not nuisances *per se,* and could not be
abated as such, and that whether they were or had
become in fact nuisances, was a question for the jury,
and its verdict is conclusive upon that matter.

Passing now to a consideration of the question as to
the right of the city to revoke the license under which
plaintiff erected the water tanks, the rule seems to be that
after a municipality has granted a license or franchise to
a private person or corporation to occupy a portion of a
street for public purposes, and the licensee has acted upon
such grant, and expended money on the faith thereof, the
city cannot revoke the license without compensation to
the owner, unless the erection or structure so authorized
is, or has in fact by subsequent use become, an actual
nuisance : 1 Dillon, Mun. Corp. 314; *Hudson Telephone*

*Co.* v. *Jersey City,* 49 N. J. L. 303 (60 Am. Rep. 619); *Commonwealth* v. *City of Boston,* 97 Mass. 553. In this case, the question as to whether these water tanks were or by plaintiff's negligence had become nuisances, was submitted to the jury, and their verdict being against the city, it was not justified in revoking the license and removing the tanks, and must respond in damages to plaintiff for so doing.

Judgment of the court below is therefore affirmed.