J. E. PETTIT, Appellant, v. THE INCORPORATED TOWN OF GRAND JUNCTION, GREENE COUNTY, IOWA.

Action to Abate Nuisance and for Damages: MEASURE OF DAMAGES:
1   EVIDENCE.    In an action for damages and to abate a nuisance, the measure of damages is the value of the use of the property for which it is intended, unobstructed.   Evidence of damage held sufficient to support the action.

Continuing Nuisance: . NOT BARRED.   The five year statute of limitation will not bar an action to abate a nuisance which is not permanent in its nature.   Evidence considered and the erection of certain buildings in the street held not to be a permanent nuisance.

Abatement of Nuisance: ABANDONMENT OF STREET.   Where a city erects its public buildings in a dedicated street they may constitute a nuisance the same as though erected by a private individual, and though the street may cease to be used for travel, that fact is not the basis of a claim of right on which to found the defense of abandonment in an action by an abutting property owner for damages and abatement of the nuisance.

*Appeal from Greene District Court.*—HON. S. M. ELWOOD, Judge.

SATURDAY, JANUARY 31, 1903.

ACTION for damages, and to abate a nuisance.   A verdict was directed for the defendant, on which judgment was entered.   The plaintiff appeals.—*Reversed.*

*W. W. Turner* and *Owen Lovejoy* for appellant.

*Russell & Toliver* and *I. D. & R. G. Howard* for appellee.

LADD, J.—Main street, in Grand Junction, is intersected by Eleventh street, which runs north of it one hundred and sixty-five feet, and terminates at the right of way of the Chicago & Northwestern Railroad Company, forming a *cul-de-sac.*   The evidence tended to show that these streets were dedicated by the filing of an original plat of the town some thirty years ago, and had been accepted and improved.   Lot 1, block 59, extends from Main street north to the right of way, abutting Eleventh

street on the east. The south one hundred feet is occupied by a bank. The north sixty-five feet, together with lot 2, next east, was purchased by plaintiff in March, 1900. The defendant constructed a town hall at the north end of this street, in 1882, next to the right of way, and about twenty-seven feet from the east line of the street. Later (the precise date not appearing) it put a coal shed four or six feet wide on the east side, and erected a bell tower to the south, and four or five years ago moved its jail to the northeast corner of the *cul-de-sac*. Shortly after purchasing the land, plaintiff notified the town authorities to vacate the street, and, as they failed to comply, brought this action for damages to the use of his property, with a view of having the street obstructions abated. After his evidence had been introduced, the court directed a verdict for defendant.

EXHIBIT "A"

Chicago & Northwestern

I.    The appellee first insists, in support of the court's
action, that there was no evidence of damages.    Hamel
testified:    "I am acquainted with the rental value of prop-
erty in Grand Junction, and, taking into con-
sideration the situation of those lots, and the
fact of those buildings there upon the street,
and the purpose for which that property
would be adapted by reason of its location, I would con-
sider the reasonable rental value between March 25th and
August 16th very little, if anything, per month.    If those
obstructions were out of the street, the reasonable rental
value from March to August 16th would probably be from
two to three dollars a month."    It appeared that the lots
had grown up to weeds during the summer, and on cross-
examination he said if left in that condition, the use
would be of no value, with or without the obstructions.    The
test is not the value of the use when not devoted to any
use whatever, but when occupied for the purposes for
which the property is suitable in its then condition.    Other
evidence of similar import tended to establish plaintiff's
claim for damages.    Appellee makes the point that plain-
tiff would not have rented had the obstructions been
removed.    This is wholly immaterial, as he proposed to
make use of it himself in the erection of a warehouse
thereon.    Not the value of it to him for that purpose, but
the value of the use of which he was deprived by the
existence of the obstructions generally, was the measure
of damages, and such the evidence tended to establish.

II.    Appellee next argues that, though the location
of these structures in the street originally constituted a
nuisance, it was permanent in character, and for that
reason all damages accrued immediately, and,
as more than five years have since elapsed,
the claim is barred by the statute of limitations.    It relies
on *Powers v. City of Council Bluffs*, 45 Iowa, 652; *Fowler
v. Railway Co.*, 91 Iowa, 533; *H,dge v. Shaw*, 85 Iowa, 137;

*1.  ACTION to
abate nuis-
ance: meas-
ure of dam-
ages: evi-
dence.*

*2.  CONTINUING
nuisance:
not barred.*

*Bizer v. Power Co.*, 70 Iowa, 145; *Stodghill v. Railroad Co.*, 53 Iowa, 341; *Cain v. Railroad Co.*, 54 Iowa, 255. But we do not think the case within the principle of these decisions, which was thus stated in *Town of Troy v. Cheshire R. Co.*, 3 Fost. 83 (55 Am. Dec. 177): "When ever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but human labor, there the damage is an original damage, and may be at once fully compensated." It seems to have been limited strictly to nuisances of a character unchangeable save by the labor of man. In *Powers' Case* a ditch was so negligently constructed as to result in the excavation of a large portion of plaintiff's lots. "Its peculiar feature consists in the fact that the negligence complained of was injurious only through the gradual operation of an element of nature. But that element— the water—was a permanent and calculable force." In the *Stodghill Case* water was diverted on the plaintiff's land by the construction of a permanent bank of earth. In *Bizer's Case* the jury especially found the dam and embankment permanent. In *Hodge v. Shaw* the structure was a brick building, and held to be permanent.

In *Fowler v. Railway Co.*, previous decisions are reviewed and the conclusion reached that "in a case like that at bar, where the injury complained of is the construction and operation of the main line of railroad, which is conceded by all parties to be permanent in its character, and which, it may well be presumed, will continue indefinitely and perpetually, and which cannot be remedied except by the company ceasing to do business over its main line, or removing the same to some other locality, the structure should be treated, in view of all the facts, as of a permanent character." It will thus be seen that in all cases decided by this court where the nuisance has been deemed permanent, rather than continuing, the

structures have been of such a nature as to continue indefinitely, and incapable of removal in their present condition. So, too, in *Town of Troy v. Cheshire R. Co.* where the defendant had erected a permanent embankment. *Fowle v. New Haven & Northampton Co.,* 107 Mass. 352; *Fowle v. New Haven & Northampton Co.* 112, Mass. 339, (17 Am. Rep. 106), often cited, has been overruled by *Wells v. New Haven & Northampton Co.,* 151 Mass. 46 (23 N. E. Rep. 724, 21 Am St. Rep. 423), and *Aldworth v. City of Lynn,* 153 Mass. 53 (26 N. E. Rep. 229, 10 L. R. A. 210, 25 Am. St. Rep. 608). In *City of North Vernon v. Voegler,* 103 Ind. 314 (2 N. E. Rep. 821), the damages claimed were because of the construction of an embankment in the street, and the court held that but one recovery could be had. Even with the rule limited as suggested, it has been met with vigorous opposition and been declared to be unsound in principle by several courts of eminent respectability. See, in addition to above cases from Massachusetts, *Uline v. Railway Co.,* 101 N. Y. 98 (4 N. E. Rep. 536, 54 Am. Rep. 661); *City of Nashville v. Comar,* 88 Tenn. 415 (12 S. W. Rep. 1027, 7 L. R A. 465); *Doran v. City of Seattle,* 24 Wash. 182 (64 Pac. Rep. 230, 54 L. R. A. 532, 85 Am. St. Rep. 948).

Without intending to question the authority of our previous decisions, we are not inclined to extend the rule still farther, so as to include structures not ordinarily regarded as permanent in location or character. As the statute did not authorize the construction of the buildings in the streets, the intention to permanently locate them there is not, in the absence of evidence to the contrary, to be inferred; that is, the burden is upon the party asserting that an obstruction in the highway is a permanent nuisance, instead of a continuing one, to establish the fact by proof. This was not done. These buildings were frame, and such as could readily have been removed by the use of modern machinery, practically without injury. The

character of the foundation was not shown, and no evidence concerning the feasibility of removal was introduced. Moreover, as already observed, they were placed in a situation where the municipality had no right to locate them; and in this respect the case is distinguishable from most of those cited, where the nuisance consisted in negligently making an improvement where the party at fault had the right to construct it. The wrong did not consist in excavating the ditch, in the *Powers Case*, or in constructing the embankment in the other where this was done, but in negligently so doing, to the injury of others. See *Cain v. Railway Co.*, 54 Iowa, 255; *Merchants' Union Barb Wire Co. v. Chicago, R. I. & P. Ry. Co.*, 79 Iowa, 613. As the obstructions do not appear to have been permanent, the action was not barred by the statute of limitation.

III. The town hall had stood on the portion of the street covered by it for seventeen years. On this ground travel had necessarily ceased. The record does not disclose when the other buildings were erected, 3. ABATEMENT of nuisance: abandonment of street. except that the county jail was placed in its present position four or five years ago. As to these, then, there was no affirmative showing of abandonment of the street. Nor can it be said that the part occupied by the hall has been abandoned. True, title thereto was in the town, and it might have been vacated. But this was not done. The obstruction was placed in the street in violation of its express duty to keep it open and free from obstructions. Section 753 of the Code. That a street or part thereof may be abandoned by a town or city is settled by the decisions of this state. *Larson v. Fitzgerald*, 87 Iowa, 402; *Davis v. Huebne*, 45 Iowa, 574; *Weber v. Iowa City*, (decided at present term,) and authorities cited. But nonuse alone will not defeat the claim of the public.

An examination of the cases will disclose that there must appear some equitable consideration in favor of the

party claiming,—as that he has been in actual and notorious possession of the land under claim of right for a long time.  The record presents no such showing in behalf of the defendant.  So far as appears, the town laid no claim to this ground, save as a part of the public street.  No statute authorized it to erect buildings on it.  It might not have granted permission for the diversion of the street from public to private uses by individuals, nor was the municipality empowered to devote it to public use not consistent with the object of its dedication.  Elliott, Roads & Streets, section 657;  *Cohen v. Mayor etc. of New York*, 113 N. Y. 532 (21 N. E. Rep. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506);  *Webb v. City of Demopolis*, 95 Ala. 116 (13 South. Rep. 289, 21 L. R. A. 62);  *Pfau v. Reynolds*, 53 Ill. 212;  *State v. Murphy*, 134 Mo. 548 (34 L. R. A. 369, 56 Am. St. Rep. 515 and note [s. c. 31 S. W. Rep. 784, 34 S. W. Rep. 51, 35 S. W. Rep. 1132]);  *Savage v. City of Salem*, 23 Or. 381 (31 Pac. Rep. 832, 24 L. R. A. 787, 37 Am. St. Rep. 688).  In *Town of Spencer v. Andrew*, 82 Iowa, 14, in holding that the location of scales in the street might be authorized under proper regulations, the court said:  "The paramount purpose of maintaining streets and alleys is for public travel, and all other uses must be subordinate thereto.  The city or town must keep them free from obstructions, except where the use or obstruction is such as the city or town is especially empowered to and has authorized."  The fact that the town authorities, instead of individuals, erected the obstruction, cannot alter its character as a public nuisance.  A municipality has no more right to erect and maintain such an obstruction than a private individual possesses, and an action may be maintained against the corporation for damages occasioned by such a nuisance, for which it is responsible, in any case in which, under like circumstances, an action could have been maintained against an individual under similar circumstances.  *Harper v. City of Milwaukee*, 30

Wis. 365, and cases cited; *St. John v. Mayor, etc. of New York*, 3 Bosw. 483; *City of Petersburg v. Applegarth's Adm'r*, 28 Grant 321 (26 Am. Rep. 357;) *City of Morrison v. Hinkson*, 87 Ill. 587 (29 Am. Rep. 77). As heretofore said, the nuisance was a continuing one, and every day of its maintenance was a fresh invasion of the law enjoining upon the defendant the duty of keeping the street open. Under these circumstances, there was no basis for a claim of right on which to found the defense of abandonment. No length of time can render a public nuisance, such as an obstruction of the highway, legal, or give the person maintaining it any right to continue it to the detriment of the public. *City of Waterloo v. Union Mil Co.*, 72 Iowa, 437; Elliott, Roads & Streets, 659.

IV. There is nothing in the defense of adverse possession or the claim of acquiescence, for the evidence failed to show occupancy of the ground under any other claim than that it was part of the public street. The contention that the erection and maintenance of the buildings was *ultra vires* is not well grounded. The defendant was authorized to erect them, and to choose a location. The streets were under its control. Regardless of whether the officers were within the scope of their power in the original construction, the town maintained these buildings in the streets for years in violation of its statutory duty to keep it open and free from obstructions. Having so done, citation of authority is not required to demonstrate its liability for resulting damages.—REVERSED.