BUFFON S. WALKER and MARY STEWART, as Trustees of JOSEPH B. STEWART Estate, Appellants, v. CITY OF DES MOINES, JAMES R. HANNA as Mayor, J. I. MYERLY, W. A. NEEDHAM, ZELL G. ROE and FRED T. VAN LIEW, as Councilmen of the City of Des Moines, Polk County, Iowa.

Municipal Corporations: STREETS: VACATION: OWNERSHIP AND USE.
1  The fee to all streets and alleys is in the city, but held by it in trust for the benefit of the general public. A city council, however, has power to vacate a street, and having vacated it the

council may dispose of the ground in such manner and upon such terms as it may direct, or it may make use of the same for any legitimate purpose.

**Same:** DISCRETION. While a city has statutory power to vacate streets
2 and alleys it cannot exercise this power · arbitrarily and in disregard of the trust for the use of the public. It has, however, a broad discretion, and in the absence of any showing of fraud or wrong the courts will not interfere with its action.

**Same:** ABUSE OF DISCRETION: EVIDENCE. In determining the question
3 of whether a street should be vacated the primary inquiry is whether the same is necessary for public use and convenience, and is sufficiently traveled to justify its maintenance at public expense. The question of disposition is of secondary consideration, and should be postponed until the feasibility of vacation has been settled. In the instant case the travel was simply to and from the rear of lots abutting on the street forming a cul de sac and a vacation of the center, leaving a sufficient strip on either side for access to the lots, was not an abuse of discretion.

**Same:** VACATION OF STREET: DAMAGES. Where access to lots abutting
4 upon a street is not interfered with by its vacation, the owners of the lots have no right to compensation on account of the vacation.

*Appeal from Polk District Court.*—HON. CHARLES S. BRADSHAW, Judge.

SATURDAY, JUNE 7, 1913.

SUIT to set aside an ordinance vacating a street, and to enjoin its use for the storage of city machinery, resulted in a decree dismissing plaintiffs' petition. The plaintiffs appeal. —*Affirmed.*

*W. S. Ayres* and *Oscar Strauss,* for appellants.

*Robert O. Brennan, H. W. Byers,* and *Eskill Carlson,* for appellees.

· LADD, J.—The plaintiffs have title, as trustees, to lot 3 and the south thirty-two and one-half feet of lot 2, in block 1, East Des Moines, now within the limits of the city of Des Moines, but several blocks from the business portion of the city.   These lots are about one hundred twelve and one-half feet on First street, running north and south, and lot 3 lies along Des Moines street on the south, which commences at a narrow strip of land along the east side of the Des Moines river, known as "Water Power Place," and runs to the east. "Water Power Place" also forms the west boundary of the lots.   That part of Des Moines street west of First street is a *cul de sac,* and is eighty feet wide and one hundred and twenty-four feet long on the north side and two feet more on the south side.   It is neither curbed nor paved.   There are four small dwellings on the lots, but none facing Des Moines street, and there is no alley along the north line of the lots. The streets were dedicated by the owners of the land in platting it into lots and blocks in 1854, and afterwards confirmed by them in 1859, and have been traveled for more than twenty years.   On October 2, 1912, the city council of Des Moines passed an ordinance in words following:

Section 1.   That there be and is hereby vacated all of that · part of Des Moines street in the city of Des Moines bounded as follows:   Beginning on the west line of East First street at a point sixteen (16) feet south of the northwest corner of East First street and Des Moines street; thence west on a line parallel with the north line of Des Moines street one hundred (100) feet; thence south thirty-one (31) feet; thence east one hundred (100) feet to the west line of East First street; thence north forty-one (41) feet to the point of beginning.
Sec. 2.   That portion of Des Moines street by section 1 hereof vacated be and the same is hereby dedicated to the use of the city of Des Moines for the use and occupancy of a public yard.   .

· Prior to this the city council had resolved:

That the Sup. of the Dept. of streets and public improvements is hereby authorized to construct a suitable storage and

warehouse building on Des Moines street between East First street and the Des Moines river, the cost of the same not to exceed $1,000.00.

And, notwithstanding plaintiff's protest, the department of public streets and improvements proceeded with the construction of a building with north wall nine feet high and the south wall 12 feet, with gravel roof, to be used in storing wagons, carts, flushers, and other tools of the department. The plat indicates the situation:

Without questioning the power of the city to vacate streets and alleys, the appellants contend that this may not be done by the city in order to devote the same to its private use. The fee to all streets and alleys is in the city, and, as contended by appellants, title thereto is held by it in trust for the general public. This was laid down on great consideration in *Clinton v. Railway*, 24 Iowa, 455. But the Legislature has authorized the city council, by ordinance, to withdraw a street or alley from such public use by vacating it.

1. MUNICIPAL CORPORATIONS: streets: vacation: ownership and use.

See section 751, Code. And after vacating the same the city, through its council, may dispose of the ground so vacated "in such manner and upon such terms as the council shall direct." Section 883, Code. When continued as a street, the city could not divert it to other uses (*Pettit v. Grand Junction*, 119 Iowa, 352); but having effected its vacation the title, freed from the trust, continues in the city, and it may convey the ground vacated to another, to be used for private purposes. *Marshalltown v. Forney*, 61 Iowa, 578; *Dempsey v. Burlington*, 66 Iowa, 687; *Harrington v. Railway*, 126 Iowa, 388; *Spitzer v. Runyan*, 113 Iowa, 619. See *Chrisman v. Brandes*, 137 Iowa, 433. As said in *Tomlin v. Railway Co.*, 141 Iowa, 599: "When a street is properly vacated, it ceases to be a street. The right of the public therein is divested, and for all of the essentials of this case it becomes, in effect, private property. . . . Elliott on Roads and Streets (2d Ed.) section 136. And when a street ceases to be public by reason of its vacation it is private property, within the meaning of the law, and a road located thereon does not entitle an abutting owner to damages." If, then, the city became the owner of the vacated ground, it could make use of the same for any legitimate purpose, and the erection of the structure for the storage of vehicles and tools ought not to be declared an improper use, unless shown to constitute a nuisance.

But it is well settled that, though the city has the power to vacate its streets and alleys, this power may not be exercised arbitrarily and in disregard of the trust for the use of 2. SAME: discretion. the public. This doctrine was recognized in *Williams v. Carey*, 73 Iowa, 194, and is alluded to in several of the cases above cited.

The rule is well stated in 2 Elliott on Roads and Streets, section 1182: "Whether it is expedient to discontinue a highway is a question for legislative decision, and when the authority to discontinue is delegated to local officers, and no restrictions are placed upon its exercise, the officers are invested

with a very broad discretion, and unless this discretion has been abused the courts cannot interfere.''

The subject was touched in *Spitzer v. Runyan,* 113 Iowa, 619, where, in upholding the vacation of a street for depot purposes, the court, speaking through Waterman, J., said: ''We must look further, then, for the statutes that govern. Section 751, among other powers given, authorizes cities and towns to vacate streets and alleys. It is said by appellants that this power can be exercised only for some public purpose, and that the purpose here is not public. While the power to vacate is not arbitrary, and may to some extent be controlled by the courts, the cases are exceptional where such interference is authorized. *McLachlan v. Town of Gray,* 105 Iowa, 259. See, also, 2 Dillon, Municipal Corporations, 666. We have held that a city council may divert the ground covered by an alley which is vacated from public to private use by granting it to an individual. *Dempsey v. City of Burlington,* 66 Iowa, 687. Likewise, that a city may vacate an alley for the purpose of allowing it to be devoted to private use. *City of Marshalltown v. Forney,* 61 Iowa, 578. We do not feel called upon here to go to the extent of the doctrine announced in these cases, in order to decide the issues before us. Ostensibly, the vacation and conveyance of the streets and alleys in question were for the public good. Where no fraud is charged, the determination of such a question is within the discretion of the council, and not subject to control by the courts.''

In *Smith v. McDowell,* 148 Ill. 51 (35 N. E. 141, 22 L. R. A. 393), the vacation of a street open and used by the public for the occupancy of an individual was denounced as illegal, the court, after reviewing the authorities, saying:

The municipal corporation holding and controlling its streets in trust for the use of the general public, without power of converting them to any other use, it follows, necessarily, that the right to 'vacate the same' is to be exercised only when the municipal authorities, in the exercise of their discretion,

determine the street is no longer required for the public use or convenience. . . . It is not necessary to here discuss or determine whether the courts will in any case, interfere to prevent the abuse of municipal discretion in the respect mentioned for the reason that it is not sought to restrain the exercise of such discretion, but to prevent the perversion of their power to the promotion of private interests, in violation of the trust upon which the streets are held. . . . In this case there is no pretense that the public interests required the vacation of any part of the street, or that any public interest, local or general, would be subserved by the proposed vacation. The ordinance, professedly and in terms, proposed to destroy the public right and use, for the sole purpose of enabling a private person to occupy a portion of the street with a permanent structure, appurtenant to his building abutting upon the street. This the municipal authorities are not empowered to do, and their action was *ultra vires* and void.

In *Horton v. Williams,* 99 Mich. 423 (58 N. W. 369), the Supreme Court of Michigan declared the proceedings for the vacation of an alley invalid, saying:

There is another and fatal objection to the proceedings taken by the common council. It shows upon its face that the inducement for the council's action was the division of the property attempted to be acquired by the vacation between the defendant and the city. The council was set in motion by the defendant, whose apparent motive was to procure a valuable frontage for his own use, and in order to secure it he proposed to the council to divide the land acquired. It was held in *Shue v. Commissioners,* 41 Mich. 638, (2 N. W. 808), that every road must be opened or closed upon its own merits. 'It is easy to see,' says the court, 'how great mischief and wrong might be done by uniting several different schemes. Combinations of separate interests are not allowed.' The affidavits of the five aldermen who voted for the resolution of vacation appear in this record; and, while they depose that the alley was unsightly, they also say that the city would thereby acquire a valuable property interest in the way of a city hall and engine house, without expense to the city. The same motive might suggest the vacation of any street. The advantage which the public derives from the discontinuance of a way must arise from the vacation itself, rather than from the use

to which the property is put, or from the fact that the city, through a deal with the individual specially interested, is to have an interest in the property acquired by such vacation. A city cannot barter away streets and alleys; nor can it do indirectly, by invoking its power of vacating ways, what it cannot do directly. Streets and alleys are not to be vacated at the instance of individuals interested only in the acquisition of the vacated property, and the exercise of legislative discretion in such matters must, at least upon the face of the record, be free from affirmative evidence that such discretion was invoked for individual gain, and its exercise influenced by an offer to divide the property acquired.

As the street and alleys are held by the city in trust for the general public, it must, in all matters relating thereto, act in behalf of the public, and may not dispose of them in disregard of public good, in order to subserve the private interests of the municipality or of others, unless this be in recognition of a public purpose approved by the Legislature. The sole inquiry should be whether the way is necessary for public use and convenience, and sufficiently traveled to justify its maintenance at the public expense; and the matter of subsequent disposition should be postponed until the feasibility of vacation has been settled, or at the least treated as of secondary consideration. If properly vacated, the city may devote the ground to whatever legitimate purpose it may elect, or otherwise dispose of the same. The use, then, to which the defendants propose to make of the ground is material only as it bears on the validity of the ordinance effecting the vacation.

3. SAME: abuse of discretion: evidence.

There was little or no travel on the portion of the street below First street, and this was to and from the rear of the lots in hauling coal and the like for the use of tenants. A space sixteen feet wide on one side of the part vacated and twenty-three feet wide on the other was left, through which access to the back end of the lots might be had for these and other like purposes. Neither ingress nor egress from First street was interfered with. The thought of the city seems to

have been that the street was not essential to the convenient use of the lots on either side, and was not traveled by the public generally; that the portions on either side of the part vacated would serve as alleyways, be ample for and fulfill every purpose for which the street had been used, and as the evidence tending so to show was uncontradicted, and its vacation would relieve the city of the cost of maintenance, it ought not to be said that enacting the vacation ordinance the city council abused the broad discretion with which the law has clothed it, or arbitrarily violated the obligation of the trust by virtue of which it held title to the street in question.

Access to plaintiffs' lots not having been interfered with, they could have no claim for compensation. *Ridgway v. Osceola*, 139 Iowa, 590. And therefore interference was rightly refused on this ground also. There was no error in denying the relief prayed.—*Affirmed.*

4. SAME: vacation of street: damages.