Dean BRICKER et al., Appellants,

v.

IOWA COUNTY, Iowa, BOARD OF
SUPERVISORS, Appellee.

No. 2-56831.

Supreme Court of Iowa.

April 14, 1976.

Jerald W. Kinnamon and Jon M. Kinnamon, Cedar Rapids, for appellants.

Lewis C. McMeen and James C. Steffes, Marengo, for appellee.

Heard by MOORE, C. J., and LeGRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves the validity of an order by a county board of supervisors vacating a portion of a secondary highway.

Iowa County, Iowa, has a large number of bridges in its secondary highway system. One such bridge traversed Bear Creek at the site of the Bricker and Smith farms. See accompanying sketch. The Bricker farm lies south of the creek, but the Smith farm lies on both sides of the creek with the buildings on the south side.

N ←

SECS. 10-15, TWP. 80 N., RG. 12 W.

The data before the board of supervisors varied as to the extent of use of the north-south county highway running between the Bricker and Smith farms. A traffic count by the Iowa State Highway Commission in 1970 at the first intersection south of the bridge showed 25 vehicles per day; private estimates as to the use of the highway, made after the vacating in question, showed a substantially higher figure. The highway was useable except for a period in the spring when the creek overran the approaches to the bridge. The highway provided access to and from United States Highway 6 to the north and Ladora. Another north-south secondary highway one mile to the east also provides access to and from Highway 6 and Ladora, as does north-south old Highway 6 two miles to the west.

The county highway between the Bricker and Smith farms also provided access for the Smiths from their buildings on the south part of their farm to the north part of their farm. Without such access, the Smiths must travel a route by way of the highway a mile east or the highway two miles west, to get to and from the north part of their farm.

On September 28, 1972, a county employee drove a dump truck over the county highway in question. As the truck crossed the bridge over Bear Creek, the bridge collapsed.

The county board of supervisors held a series of meetings to decide what to do about the bridge. These were held on November 14 and 30 and December 5, 1972, and February 6, 1973. Numerous people attended. The board had information before it about the number of vehicles which used the bridge, both the low and the high figures. It also had an estimate by the county engineer that replacing the bridge would cost $114,000; recommendations by an Iowa State Highway Commission engineer and the county engineer that the bridge be closed; and information that numerous other county bridges needed repair. The board also considered the possibility of improving the east-west highway south of the highway in question to improve access

to the other north-south highways, and the tight budgetary condition in the county road fund.

On February 7, 1973, after the series of meetings, the board ordered that the highway at the bridge be vacated for a total distance of 1300 feet as shown on the sketch. The board allowed $300 on a Bricker damage claim and $5640 on a claim of the Smiths. The board also ordered payment of certain other damages.

These events resulted in lawsuits. Brickers and Smiths brought the one now before us. They challenged the validity of the board's order by petition to the district court for a writ of certiorari. The court granted a writ, the board made return, and the trial court heard the case on the return and considerable additional evidence. The court then annulled the writ. Petitioners appealed.

Petitioners do not claim the board did not comply with the statutory procedural steps for vacating the portion of the highway. In substance they claim that (1) the board's order vacating the highway is unsupported by substantial evidence, (2) the board did not conduct meaningful hearings, (3) the board by its order improperly attempted to affect other litigation in which it was embroiled, and (4) the board did not consult the township trustees.

I. *Substantial Evidence.* Section 306.10 of the 1973 Code of Iowa grants boards of supervisors and certain other agencies authority on their own motion "to alter or vacate and close" highways. Section 4.1(5) defines highways to include bridges. The board must set a hearing and give notice, §§ 306.11–306.13, and interested persons may object and claim damages. § 306.14. Section 306.16 then provides:

> After such hearing, the [commission, board or boards] which instituted such proceedings and conducted such hearing, shall enter an order. Said [commission or board] may dismiss the proceedings, or it may vacate and close such road, part thereof, or crossing, in which event it shall determine and state in the order the amount of the damages allowed to each

claimant. Said order thus entered shall be final except as to the amount of the damages. A copy of such order shall be filed with the county auditor of the county or counties in which the road, part thereof, or crossing, is located and with the state highway commission and the board or commission in control of any affected state land.

Section 306.17 provides an appeal procedure as to the amount of damages. The damage issue is not before us.

■ A threshold problem is whether a board's decision on the merits to vacate or not to vacate is open to review by certiorari if the board has followed the statutory procedure—as it did here. The third sentence of § 306.16 states that the board's order "shall be final" except for damages. Although a given statute makes no provision for appeal from a decision of an administrative body, this court has in general allowed certiorari to test claims of lack of jurisdiction or illegality. See *Reter v. Davenport, R. I. & N. W. Ry.,* 243 Iowa 1112, 54 N.W.2d 863. But this particular statute goes farther and makes the board's decision "final" except for damages. Formerly this finality provision applied only to orders of the state highway commission. Code 1950, §§ 306.26, 313.51. See on this subject *Chrisman v. Brandes,* 137 Iowa 433, 112 N.W. 833 (vacating by board of supervisors); *Walker v. City of Des Moines,* 161 Iowa 215, 142 N.W. 51 (by city council); *Warren v. Iowa State Highway Comm'n,* 250 Iowa 473, 93 N.W.2d 60 (by state highway commission); *A And S, Inc. v. Iowa State Highway Comm'n,* 253 Iowa 1377, 116 N.W.2d 496; and *Hinrichs v. Iowa State Highway Comm'n,* 260 Iowa 1115, 152 N.W.2d 248.

We need not now resolve this interesting question of finality, since the result here is the same whether or not certiorari may be used to test an order to vacate. Petitioners base this part of their case on the familiar ground of certiorari that a decision of an administrative body is "illegal," and certiorari is therefore available, when a decision is without substantial evidentiary support. See rule 306, Rules of Civil Procedure (cer-

tiorari available when board exceeds its jurisdiction or acts illegally); *Staads v. Board of Trustees of Fireman's Retirement Pension Fund,* 159 N.W.2d 485, 490 (Iowa) ("Review of the facts is for the purpose of determining whether the tribunal's decision is supported by any competent evidence."). Petitioners' assertion that the board acted arbitrarily and capriciously is in essence founded on their claim that the board's decision lacks evidentiary support.

■ Certainly petitioners made a good case before the board for building a bridge and leaving the road open. But the board had information which pointed in the opposite direction—the low rate of use of the highway, the two parallel north-south highways, the cost of a new bridge, the opinions of the state and county engineers, the benefits from improving the east-west highway on the south, the difficult budgetary situation, and the need to repair bridges in operation elsewhere. The board was not required to accept petitioners' evidence, and its decision to vacate was amply supported by the information before it. *Crowley v. Johnson County,* 234 Iowa 142, 12 N.W.2d 244; *Chrisman v. Brandes,* 137 Iowa 433, 112 N.W. 833. See also *Staads v. Board of Trustees of Fireman's Pension Fund,* supra, at 490 ("Our question, like that before the district court, is not whether there was evidence before the board to warrant a decision it did not make but whether there was evidence to warrant the decision it did make.").

We thus hold that petitioners' first point is not well taken. By so holding we do not intimate that a board's decision on the merits to vacate may be reviewed by certiorari notwithstanding the finality clause in § 306.16.

II. *Meaningful Hearings.* The gist of petitioners' next claim is that the four hearings or meetings before the board were a sham and devoid of substance. Petitioners argue that the board may have gone through the form of hearings but it was blind to the evidence, ignored the assertions of its constituents, and knew from the beginning what the decision would be.

The legislature requires in § 306.11 that a board conduct a hearing on the question of vacating a highway. We agree with petitioners that § 306.11 contemplates a genuine hearing, not a sham. We so conclude as a matter of legislative intent, but due process decisions requiring hearings of substance provide an analogy. *Ashbacker Radio Corp. v. Federal Communications Comm'n*, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108; *Washington ex rel. Oregon Railroad & Navigation Co. v. Fairchild*, 224 U.S. 510, 32 S.Ct. 535, 56 L.Ed. 863.

Petitioners' problem here is factual: the record simply does not show that the board failed to provide a hearing of substance. Petitioners' reaction is one not uncommon among losing parties; they cannot understand how they could lose and so conclude the hearings were a farce.

We have examined the record, and it does not support petitioners' conclusion. Indeed, the board appears to have striven to give a full and fair airing of the controversy. We hold that the board observed the statutory mandate of a hearing in fact as well as in form.

III. *Other Litigation.* During the period in question, the board was involved in other litigation involving the bridge. Petitioners' third claim is closely related to their second one: that the board did not vacate the highway for the public good but rather to improve its position in the other cases. Petitioners thus assert that the hearings were in fact meaningless.

Again the record does not support petitioners' claim. A bridge was out. The situation called for action. The board was the responsible agency. No court had enjoined the board from proceeding under chapter 306 of the Code. The board proceeded without undue haste to confront and resolve the problem, as it had a legal right to do. On the record before us, we hold petitioners' third claim to be without merit.

IV. *Consultation of Trustees.* The board did not consult the trustees of the township about vacating the portion of the highway. Petitioners claim the board thereby violated § 309.10 of the Code.

Section 309.10 must be read with § 309.22. Section 309.22 requires boards to adopt a construction program annually. Section 309.10 requires boards to consult with township trustees in the preparation of the construction program.

The proposal to vacate the portion of the highway in question was not part of the construction program and did not come within § 309.10. We thus reject petitioners' fourth claim. We do not suggest that the board's vacating the portion of the highway would have been illegal had § 309.10 applied.

The trial court properly annulled the writ.

AFFIRMED.