# IN THE COURT OF APPEALS OF IOWA

No. 18-0476
Filed August 21, 2019

**FRIENDS OF BUNKER MILL BRIDGE, INC.,**
Plaintiff-Appellant,

**vs.**

**WASHINGTON COUNTY BOARD OF SUPERVISORS,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Washington County, Randy S. DeGeest, Judge.

Friends of Bunker Mill Bridge, Inc. appeals the district court's ruling on its petition for writ of certiorari upholding the order of the Washington County Board of Supervisors vacating a portion of a secondary highway. **AFFIRMED.**

Siobhan Briley of Pugh Hagan Prahm PLC, Coralville, for appellant.

John Gish and Chauncey Moulding (until withdrawal) of Washington County Attorney's Office, Washington, for appellee.

Considered by Vaitheswaran, P.J., Vogel, S.J.,* and Blane, S.J.*

*Senior judges assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Presiding Judge.**

We must decide whether we have subject matter jurisdiction to review a decision to vacate and close a road and whether, if we do, the decision is supported by substantial evidence.

## I.    *Background Proceedings*

The Washington County Board of Supervisors vacated and closed a portion of a public road near a historic bridge that was restored by Friends of Bunker Mill Bridge, Inc. (FBMB).  FBMB sought review of the decision by filing a petition for writ of certiorari with the district court.  The board moved to dismiss the petition on the ground that review was statutorily foreclosed.  The district court denied the motion.  Following a non-evidentiary hearing, the court concluded the board's decision was supported by substantial evidence.  The court denied FBMB's petition.

On appeal, FBMB does not contest the board's authority to vacate and close the road.  *See* Iowa Code §§ 306.4(2) (2017) ("Jurisdiction and control over the secondary roads shall be vested in the county board of supervisors of the respective counties."), .10 (granting county board of supervisors authority "on its own motion, to alter or vacate and close any such highway . . . over which said agency has jurisdiction and control").  Nor does FBMB challenge the statutorily authorized procedures associated with a "vacation and closing" proceeding.  *See id.* §§ 306.11, .12.[1]  FBMB simply contends the board's decision was unsupported by substantial evidence and was unreasonable, arbitrary, and capricious.

---

[1] FBMB lacked formal notice of the board proceeding but "does not contend that it lacked [actual] notice of the proposed vacation and public hearing."

In response, the board suggests district court review of its decision was foreclosed. The board raises the issue in passing and without having filed a cross-appeal from the district court's denial of its dismissal motion. Nonetheless, because the issue could implicate the court's subject matter jurisdiction, we begin there. *State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993) ("Want of subject matter jurisdiction can be raised at any time.").

## II. Subject Matter Jurisdiction

"Subject matter jurisdiction refers to the power of a court 'to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention.'" *Id.* (citation omitted). "[S]ubject matter jurisdiction . . . cannot be waived by consent, waiver, or estoppel." *Id*. at 483. "When a lower court lacks the authority to exercise its subject matter jurisdiction so as to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court." *Osage Conservation Club v. Bd. of Supervisers*, 611 N.W.2d 294, 299 (Iowa 2000) (quoting *Ferguson v. Union Pac. R.R.*, 601 N.W.2d 907, 912–13 (Neb. 1999)). The absence of subject matter jurisdiction may be raised at any time, including on the court's own motion. *Id*. at 296–97; *Mandicino*, 509 N.W.2d at 482.

Iowa Code section 306.16 states:

> After the hearing, the agency which instituted the proceedings and conducted the hearing shall enter an order either dismissing the proceedings, or vacating and closing the road, part thereof, or crossing, in which event it shall determine and state in the order the amount of the damages allowed to each claimant. *The order thus*

*entered shall be final* except as to the amount of the damages unless the order is rescinded as provided in section 306.17. . . .

(Emphasis added.)

The district court considered section 306.16 in ruling on the board's dismissal motion. After examining *Bricker v. Iowa County*, *Iowa Board of Supervisors*, 240 N.W.2d 686 (Iowa 1976), an Iowa Supreme Court opinion that raised the finality language of section 306.16, the court concluded the opinion "left open" the question of whether a road vacating/closure decision could be reviewed by certiorari. The court "proceed[ed] under the assumption that a certiorari action may be used to contest the board's decision to vacate the subject road."

In *Bricker*, as in this case, the plaintiffs challenged the validity of a board's road vacating order by filing a petition for writ of certiorari. 240 N.W.2d at 688. The Iowa Supreme Court began with section 306.16. The court stated, "A threshold problem is whether a board's decision on the merits to vacate or not to vacate is open to review by certiorari if the board has followed the statutory procedure—as it did here." *Id.* at 689. The court found it unnecessary to "now resolve this interesting question of finality, since the result here is the same whether or not certiorari may be used to test an order to vacate." *Id.* Proceeding to the merits, the court found substantial evidence to support the board's decision. The court then stated, "By so holding we do not intimate that a board's decision on the merits to vacate may be reviewed by certiorari notwithstanding the finality clause." *Id.*

*Bricker* asked but did not answer the question whether section 306.16 foreclosed certiorari review. The court's consideration of the merits of the board's

decision was an implicit concession that section 306.16 does not implicate the court's subject matter jurisdiction to consider a road closure decision. *Cf. Osage*, 611 N.W.2d at 299 ("We conclude that by failing to comply with the statutorily required public notice and hearing requirements of Iowa Code sections 335.6 and 335.7, the Board did not have subject matter jurisdiction to approve the application for rezoning of Sunset Acres Subdivision."). We conclude the district court possessed subject matter jurisdiction to consider FBMB's certiorari challenge to the road vacating/closure decision. And, because the district court possessed subject matter jurisdiction, so do we.

That said, a court may lack authority to "entertain a particular case." *Mandicino*, 509 N.W.2d at 482. "[A]n impediment to a court's *authority* can be obviated by consent, waiver or estoppel." *Id*. Failure to argue an issue or cite law may constitute waiver of an issue. Iowa R. App. P. 6.903(2)(g)(3). The board's mention of section 306.16 on appeal, without argument or cross-appeal, amounts to a waiver of any challenge to the court's authority to consider the merits of the board's decision. We turn to the merits.

### III.     *Board's Decision to Vacate Road*

The board vacated and closed:

Part of County Road #36 (Nutmeg Avenue) in English River Township in Sections 17 & 20, Township 77 North, Range 7 West, more particularly described as that portion of road beginning at a point on the centerline of Nutmeg Avenue and the South line of the NW 1/4 NW 1/4 of Section 20, Township 77 North, Range 7 West, thence Northerly and Easterly along the centerline of said road to a point on the centerline of the East-West portion of said road and 66 feet West of the former Easterly Right of Way line of the previously vacated North-South portion of said road recorded in Book 2013, Page 3874 in the office of the Washington County Recorder.

In doing so, the board found the road was "no longer required for public access." FBMB contends the finding is not supported by substantial evidence. FBMB also argues a board member's characterization of the road as a "dead end" is not supported by substantial evidence. FBMB cites case law articulating the substantial evidence standard in the context of review of agency action under the Iowa Administrative Procedure Act. *See* Iowa Code ch. 17A.

The board responds that the Iowa Administrative Procedure Act does not apply to its decisions and "Iowa Code section 306.10 does not specifically authorize review pursuant to chapter 17A." We agree the board is not a "unit of the state" and accordingly, the substantial evidence standard of judicial review set forth in the Administrative Procedure Act is inapplicable. *See* Iowa Code §§ 17A.2(1) (defining "agency"), .19(10)(f)(1) (defining substantial evidence).

That said, the board's decision is subject to substantial-evidence review under the certiorari standard. *See Bricker*, 240 N.W.2d at 689 ("[C]ertiorari is therefore available . . . when a decision is without substantial evidentiary support."). Substantial evidence is "any competent evidence." *Id.* (citation omitted).

Minutes of board proceedings reveal the following pertinent facts. The board was presented with three options to deal with a portion of the road that abutted private property on the south end of the historic bridge. The county engineer advised the board that one option would be to "completely vacat[e] the road, resulting in the land being returned to private ownership and completely eliminating county maintenance responsibility as well as county access." Twenty-three members of the public addressed the board. Most opposed vacating the road, but two favored closure. The matter was tabled for several weeks.

When the board considered the issue again, the county engineer explained that a portion of the road adjacent to the bridge had already been vacated and the land that constituted the road was now private property. Record was also made of the board's previous determination not to allow the bridge to "serve as part of the Washington County transportation system," the county's sale of the bridge to a private group, the county's prior relinquishment of "the right-of-way and responsibility due in part to repair costs as well as liability," and landowners' limited access to the bridge for a period of decades.

A board member opposed to vacating the road essentially acknowledged existing restrictions on public access to the area by referring to trespassers in the vicinity. He declined to support the resolution vacating the road not because it would limit public access to the bridge but because he wished to leave the county's options open for future development of a trail.

In sum, substantial evidence supports the board's finding that the road was no longer needed for public access and substantial evidence supported the board member's characterization of the road as a dead end. *See Bricker*, 240 N.W.2d at 689 ("The board was not required to accept petitioners' evidence, and its decision to vacate was amply supported by the information before it."). As the court stated in *Bricker*, the petitioners "made a good case before the board" but "the board had information which pointed in the opposite direction." *Id.* The board considered privacy, safety, littering, and trespassing concerns and the opinion of the Washington County Engineer that the county lacked money to conserve the property and would need an easement from adjoining landowners to "run a trail through there." No illegality was shown.

FBMB's argument that the board's decision was unreasonable, arbitrary, and capricious "is in essence founded on their claim that the board's decision lacks evidentiary support." *Bricker*, 240 N.W.2d at 689. Our conclusion that the board's decision has evidentiary support resolves the issue.

We affirm the district court's annulment of the writ of certiorari.

**AFFIRMED.**